STELLA DIAS & another,[1] administrators,[2] *vs.* BRIGHAM
MEDICAL ASSOCIATES, INC.

Bristol. September 5, 2002. - December 23, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*Practice, Civil,* Summary judgment. *Negligence,* Doctor, Medical malpractice.
*Medical Malpractice,* Vicarious liability.

A Superior Court judge erred in allowing summary judgment for the defendant,
a so-called medical practice group, on the ground that the defendant did
not and could not exercise control over the treatment decisions of one of
its medical practice group members (the physician) against whom the
plaintiffs had alleged medical malpractice, where this court concluded that
traditional respondeat superior liability applied to the defendant, and that
to establish such liability it was not necessary that the defendant had the
right or ability to control the specific treatment decisions of the physician;
however, while the record conclusively established that the physician was
an employee of the defendant, the record was inadequate for any definitive
determination whether the physician's treatment in question was within the
scope of his employment by the defendant, and the case was remanded for
further proceedings. [319-324]

CIVIL ACTION commenced in the Superior Court Department on
May 13, 1998.

The case was heard by *Ernest B. Murphy,* J., on a motion for
summary judgment, and separate and final judgment was entered
by *John A. Tierney,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Adam R. Satin (Andrew C. Meyer, Jr.,* with him) for the
plaintiffs.

*Alice Olsen Mann (Sean M. Ennis* with her) for the defendant.

*Carl Valvo & Kenneth W. Terrell* for Professional Liability
Foundation, amicus curiae, submitted a brief.

---

[1]Luis Dias.

[2]Of the estate of Ethan Dias.

IRELAND, J. The plaintiffs, Stella and Luis Dias, administrators of the estate of their son, Ethan Dias, claim that defendant Brigham Medical Associates, Inc. (BMA), is vicariously liable under the theory of respondeat superior for the alleged medical malpractice of one of its physician practice group members, Dr. Daniel Schlitzer. Dr. Schlitzer was the on-call obstetrician at St. Luke's Hospital who treated the pregnant Stella Dias (plaintiff), following a motor vehicle accident. A Superior Court judge granted summary judgment for BMA, concluding that to hold BMA vicariously liable for Dr. Schlitzer's negligence, the plaintiffs would have to show that the corporation exercised, or had the right to exercise, direction and control over his treatment decisions. The judge found that BMA did not and could not exercise such control over Dr. Schlitzer. The plaintiffs appealed, and we transferred the case to this court on our own motion.

Because we conclude that traditional respondeat superior liability applies to the employer of a physician, and that to establish such liability it is not necessary that the employer have the right or ability to control the specific treatment decisions of a physician-employee, we vacate the judgment and remand the case for further proceedings consistent with this opinion.

1. *Facts.* We summarize the facts relevant for disposition of this appeal. On May 19, 1995, the plaintiff, at the time thirty-two weeks pregnant, was involved in a motor vehicle accident that resulted in her emergency treatment at St. Luke's Hospital in New Bedford. After being examined in the emergency room, she was transferred to the labor and delivery department, where she was treated by Dr. Schlitzer. The plaintiffs contend that the care rendered by him was negligent and resulted in the stillbirth of their son.[3]

BMA, a Massachusetts corporation, a so-called "medical practice group," was comprised entirely of physicians specializing in obstetrical medicine. The record is undisputed that Dr. Schlitzer, at the time of the incident, was an employee and of-

---

[3]The principle allegation is that Dr. Schlitzer was negligent by failing to assess adequately the status of the fetus in light of the motor vehicle accident and the plaintiff's symptoms of distress.

ficer of BMA. In fact, both Dr. Schlitzer and BMA admitted in their respective interrogatory answers that Dr. Schlitzer was an employee of BMA "during the period in question," and that Dr. Schlitzer was on staff at BMA "all times relevant hereto."[4] The judge found that, "[a]s a member of BMA, [Dr.] Schlitzer had been assigned by BMA to, and was then responsible for 'on-call' coverage at St. Luke's Hospital, and was in fact working a conventional [twenty-four]-hour shift at the [h]ospital." As to this latter point, however, the record contains ambiguities regarding Dr. Schlitzer's on-call coverage obligations on the night in question, as more fully discussed below.

2. *Discussion.* On a motion for summary judgment, the moving party, here BMA, has the burden to "show that there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). See *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), and cases cited. Additionally, "a party moving for summary judgment in a case in which the opposing party [here the plaintiffs] will have the burden of proof at trial is entitled to summary judgment if [it] demonstrates . . . that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Kourouvaci-lis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). See *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, *supra* ("standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law"); *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 556 (1976) (same). In light of these well-established principles, we consider the plaintiffs' contention that the judge erred in granting summary judgment for BMA.

Broadly speaking, respondeat superior is the proposition that an employer, or master, should be held vicariously liable for the torts of its employee, or servant, committed within the scope of

---

[4]In addition to these admissions, the record shows that BMA listed Dr. Schlitzer as a member of its five-physician practice group, BMA assigned coverage hours to him, and he had an office at BMA where he saw patients, whose records were also retained by BMA.

employment. See Restatement (Third) of Agency § 2.04 (Tent. Draft No. 2 2001).[5] See also *Burroughs* v. *Commonwealth*, 423 Mass. 874, 877 (1996). In one of its earliest cases concerning respondeat superior, the court concluded that an employer could not be held liable on that theory where the employer was unable to give direction and control to the employee regarding the precise actions that resulted in the tort, in that case an employee's method of driving or choice of route while on an errand for his employer. *Khoury* v. *Edison Elec. Illuminating Co.*, 265 Mass. 236, 238 (1928) ("the employee must be subject to control by the employer, not only as to the result to be accomplished but also as to the means to be used").

In 1969, however, in circumstances similar to those at issue in the *Khoury* case, this court broadened the scope of liability under the theory of respondeat superior, and held that an employer need not control the details of an employee's tasks in order to be held liable for the employee's tortious acts. See *Konick* v. *Berke, Moore Co.*, 355 Mass. 463, 467, 468 (1969). The facts of *Konick* were similar to those of *Khoury*: both involved an employee who, it was alleged, was negligently driving an automobile while on an errand for the employer. In the *Khoury* case, the employer was not liable for its employee's actions, while the employer in the *Konick* case was found to be liable for the employee's automobile accident, even though the employer was unable to control the precise manner and means of the employee's driving. *Id.* at 467-468. The court declared that it "should no longer follow our cases to the extent that they indicate that a master-servant relationship does not exist unless the employer has a right to control the manner and means (the details, in other words)" of the allegedly negligent conduct. *Id.* at 468. Our *Konick* decision comported with the view of the vast majority of States. *Id.* at 467. The doctrine of respondeat superior in the Commonwealth thus evolved to place the burden of liability on the party better able to bear that burden. See *Kansallis Fin. Ltd.* v. *Fern*, 421 Mass. 659, 664 (1996) ("as

---

[5]The terms "master" and "servants" are used throughout the Restatement (Second) of Agency (1958). See, e.g., Restatement (Second) of Agency, *supra* at § 219. The tentative draft of the Restatement (Third) of Agency, however, replaces those terms with the terms "employer" and "employees." See Restatement (Third) of Agency § 2.04 comment a (Tent. Draft No. 2 2001).

between two innocent parties — the principal-master and the third party — the principal-master who for his own purposes places another in a position to do harm to a third party should bear the loss").

While acknowledging these general rules, both the judge and BMA rely on *Kelley* v. *Rossi*, 395 Mass. 659, 662, 663 (1985), where we stated that the general rule is that a resident-physician is a servant (employee) of a hospital where she is employed, but also said that "the very nature of a physician's function tends to suggest that in most instances he will act as an independent contractor." *Id.* at 662. The judge understandably pointed to this statement to support his conclusion that, in the absence of evidence that an employer of a physician reserved the right to direct and control a physician's treatment decisions, a physician is presumed to be an independent contractor.[6] However, the *Kelley* court was required to determine as a preliminary matter whether a physician was a "public employee," as defined by the Massachusetts Torts Claim Act statute, G. L. c. 258, § 1. *Kelley* v. *Rossi, supra* at 661. The point was significant because a public employee is not liable in tort for acts of negligence performed within the scope of his or her public employment. See G. L. c. 258, § 2. The critical language in the *Kelley* case on which the judge relied thus concerned whether a particular physician was a "public employee" as that term was used in a statute, not with the common-law analysis of respondeat superior that governs BMA's liability for the acts or omissions of its admitted "employee."

To prevail against BMA, the plaintiffs need only establish that (1) at the time of the alleged negligence Dr. Schlitzer was

---

[6]*Kelley* v. *Rossi*, 395 Mass. 659 (1985), has been cited for the proposition that, because direction and control will result in a finding that the actor is a "servant," the independent nature of a doctor's decisions will likely mean that the doctor is not the "servant" of the hospital. See, e.g., *Hohenleitner* v. *Quorum Health Resources, Inc.*, 435 Mass. 424, 432 (2001) ("the very nature of the medical profession suggests that, in most instances, a physician acts as an independent contractor," but "a physician may be deemed a servant where the hospital controls details of the physician's physical activities"); *McNamara* v. *Honeyman*, 406 Mass. 43, 48 (1989) ("While physicians exercise independent judgment, a physician can still be deemed a servant where the principal controls the details of the physician's activities").

an employee of BMA, and (2) the alleged negligent treatment of the plaintiff occurred within the scope of Dr. Schlitzer's employment by BMA. Once employment is established, the only remaining issue is whether he was working for BMA at the time of the alleged negligent treatment, i.e., whether his treatment of the plaintiff was within the scope of his employment by BMA. This comports with traditional agency law that "[a]n employer is liable for torts committed by employees while acting in the scope of their employment." Restatement (Third) of Agency § 2.04 (Tent. Draft No. 2 2001).

In order to determine whether an employer-employee relationship actually exists, a judge may consider a number of factors. See Restatement (Second) of Agency § 220 (2) (1958). These factors may include, but are not limited to, the method of payment (e.g., whether the employee receives a W-2 form from the employer), and whether the parties themselves believe they have created an employer-employee relationship. While the point is not of import in this case where both BMA and Dr. Schlitzer admit the existence of the employer-employee relationship, we recognize that the task of determining what constitutes an employer-employee relationship is fact dependent, and that in cases where there is no clear admission of employment, a direction and control analysis may be useful to determine whether the relationship is that of employer-employee as opposed to that of an independent contractor.[7] The right to direct and control the details of an alleged employee's actions "may be very attenuated," but remains an important factor that should be examined when the employer-employee relationship is contested. See *id.* at § 220 comment d. Once an employer-employee relationship is established, however, any further analysis of the employer's right to direct and control is unnecessary. See *Pediatric Neurosurgery, P.C.* v. *Russell*, 44 P.3d 1063, 1071 (Colo. 2002) ("Once an employer-employee relationship is found, the question of control is no longer part of

---

[7]The Restatement acknowledges the difficulty in defining what constitutes an employment relationship, and stresses that many factors may be taken into consideration by the court. See Restatement (Second) of Agency, *supra* at § 220 comment c.

the court's inquiry").[8] All that remains to be determined is whether the tort occurred within the scope of employment. See *Konick* v. *Berke, Moore Co.*, *supra* at 467-468.

Applying these principles, corporate liability for the negligence of physician employees is commonly recognized. See 61 Am. Jur. 2d § 277 (2002) ("Clearly, a corporation or an individual employing a physician to act as an agent is liable for the malpractice of the physician, this being held so on the ordinary principles of agency, or respondeat superior"). See also *Bing* v. *Thunig*, 2 N.Y.2d 656 (1957), cited in numerous jurisdictions as a turning point in holding hospitals liable for the malpractice of their physicians. The *Bing* case, and other cases across jurisdictions that have followed it, stand for the proposition that although a corporate entity may not control the precise treatment decisions of physicians, the entity should not be able to escape liability for physician malpractice. See, e.g., *Sword* v. *NKC Hosps., Inc.*, 714 N.E.2d 142, 150-151 (Ind. 1999) (noting and chronicling an additional line of cases whereby apparent authority is utilized to find corporate liability for physician negligence).

Because BMA admitted that Dr. Schlitzer is its employee, the judge erred in holding that, as a matter of law, BMA could not be held liable for his alleged negligent acts because of BMA's inability to exert direction and control over his clinical decisions. The judge's rationale, that such control is presumed absent unless there is evidence to the contrary, undercuts the evolved purpose of respondeat superior liability, and would create an exception for physicians not recognized for any other profession.[9]

There remains one point that requires further comment.

---

[8]Put differently, once the relationship has been determined to be that of employer-employee, the employer is deemed to have the requisite right to direct and control the employee's performance. See *Konick* v. *Berke, Moore Co.*, 355 Mass. 463, 467-468 (1969), quoting *Hinson* v. *United States*, 257 F.2d 178, 181 (5th Cir. 1958) ("If the relationship of master and servant exists and if what the employee is doing is in the furtherance of the master's business, i.e. in the scope of his employment, the law gives the master the right of direction and control").

[9]In his summary judgment memorandum of decision, the judge cites as a basis for his decision public policy reasons for encouraging the aggregation of physicians into physician practice groups, and that such groups would be

Dr. Schlitzer was the employee of BMA on the date of the alleged negligent treatment, but the record is ambiguous as to whether he was acting as BMA's employee at the time he treated the plaintiff. Asked at his deposition for which practice group he was covering when he treated her, Dr. Schlitzer was unable to answer. Dr. Schlitzer did testify that he covered the labor and delivery department on behalf of BMA on a rotating basis, and that at least part of his twenty-four hour shift on May 19 was in fulfilment of his obligation as a BMA employee. Dr. Schlitzer also testified, however, that he had been asked to assume coverage for additional practice groups at some point during his twenty-four hour shift. If Dr. Schlitzer was under an obligation to BMA to be present at the hospital at the time he treated the plaintiff, his treatment of her would be within the scope of his employment by BMA, regardless of whether he had agreed to take on additional coverage shifts for other groups. If, however, he was providing coverage for some other group, under an arrangement independent of his relationship with BMA, at the time he treated the plaintiff, that treatment would not have been rendered within the scope of his BMA employment. Thus, while the record conclusively establishes that Dr. Schlitzer was an employee of BMA, the record before us is inadequate for any definitive determination whether Dr. Schlitzer's treatment of the plaintiff was within the scope of his employment by BMA.

We vacate the judgment entered in the Superior Court, and remand this case for further proceedings consistent with this opinion.

*So ordered.*

---

discouraged were they to be held liable for the negligent treatment decisions of their member-employees. Nothing in today's opinion, however, constrains the manner in which physician practice groups may organize or the manner in which they may structure their relationships with the professionals who will actually render services to the patients. All that today's opinion does is confirm that when the relationship forged is that of employer-employee, the ordinary rule of respondeat superior liability will apply.