Fecteau, J.
This case is before the- Court as a negligence action sounding in medical malpractice and wrongful death. The plaintiff, Mary Johnson, administratrix of the estate of her husband, Alan Johnson, alleges that Paul Cooke, M.D. (“Dr. Cooke”), a physician and employee of the University of Massachusetts Medical Center in Worcester, Massachusetts (“UMMC”), was negligent in the treatment of the decedent, Alan Johnson, during a surgical procedure at UMMC on February 26, 1997, that ultimately resulted in his death. Dr. Cooke files this motion for summary judgment pursuant to Mass.R.Civ.P. 56, alleging that because of his employment status at UMMC, he is a public employee for the purposes of the Massachusetts Tort Claims Act, and as such is entitled to qualified immunity.

BACKGROUND

The undisputed facts as revealed by the summary judgment record viewed in the light most favorable to the plaintiff, as the non-moving party, are as follows.
Dr. Cooke is a Board Certified Anesthesiologist. He was employed as a staff physician in the Department of Anesthesiology at the UMMC from 1990 until 2000 pursuant to an employment contract. As a term of that contract, Dr. Cooke agreed to abide by the policies, rules and regulations adopted by the Board of Trustees of the UMMC. Dr. Cooke was also appointed to the position of Assistant Professor of Anesthesiology. His assigned duties included patient care, instruction of medical students and residents, and administrative responsibilities. However, his primary duty was to provide anesthesia to patients.
In addition to clinical duties, Dr. Cooke was also required to attend regularly scheduled department meetings where he reported to a supervising physician on both academic and clinical matters.[2] As a condition of employment, Dr. Cooke was required to participate in the UMMC Group Practice Plan. The Group Practice Plan bills patients for services rendered, deposits the funds into a trust account and makes disbursements from that account according to the Trustees of the UMMC. The result is that physicians do not bill patients for services rendered nor do the physicians receive payments directly from patients or their insurers.
Dr. Cooke was directly supervised by the Chairman of the Department of Anesthesiology, Dr. Charles Vacanti.[3] Dr. Vacanti gave Dr. Cooke regular performance reviews and “signed ofF on Dr. Cooke’s clinical privileges. Although Dr. Cooke received his daily assignment of anesthesia cases from the Clinical Director of Anesthesia Services, it was Dr. Vacanti who had final approval of his work schedule including approval of his personal time off from work and his vacation time. Dr. Cooke was assigned all of his patients. He had no discretion over which patients he treated and he had no private patients. He was assigned an office at the UMMC. This was the only office he maintained for the practice of medicine. Dr. Cooke was paid a fixed salary as determined by Dr. Vacanti. However, the salary had to be in conformance with the guidelines established by the Trustees of the UMMC and was subject to the approval of the Dean.
Dr. Cooke received only one W-2 for the year 1997, the year in which he treated the plaintiffs decedent, reflecting his salary as a UMMC employee. As a Com *718 monwealth employee, Dr. Cooke was required to participate in the Commonwealth’s Contributory Retirement Plan. He also enrolled in the Commonwealth’s group health and dental plan and was eligible for both life insurance and long-term disability benefits.
Alan Johnson, aged 48 and diabetic, was a renal dialysis patient at the time of his scheduled surgery at UMMC on February 26, 1997. Johnson had developed an abscess on the third finger of his left hand that required drainage through a surgical procedure known as debridement.

DISCUSSION

I. Standard of Review
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motor Corp., 410 Mass. 706, 716 (1991).
II. Dr. Cooke’s Status as a Public Employee
Under the Massachusetts Tort Claims Act (“Act”) a public employer is liable for the negligent or wrongful act or omission of a public employee, if that employee is acting within the scope of his employment. G.L.c. 258, §2. The UMMC, as an entity of the Commonwealth, has been determined to be a public employer. Smith v. Steinberg, 395 Mass. 666, 668 (1985). More importantly however is the determination of whether Dr. Cooke, as a physician employed by the UMMC, is a public employee. A public employee is defined under the Act as an elected or appointed officer or employee of any public employer. G.L.c. 258, §2. However, the analysis does not end there.
Our courts have held that more than an employment status is necessary for an individual to be deemed a public employee for the purposes of the Act. Williams v. Hartman, 413 Mass. 398, 400 (1992). A physician is not necessarily a public employee simply by virtue of his state salary, contributions to the state retirement fund or because he does not set his own work schedule. Id. In the case of a physician, a profession that involves a high degree of skill and expertise that does not generally accord with taking control and direction from others, there is an assumption that the physician is acting as an independent contractor. Kelly v. Rossi, 395 Mass. 659, 662 (1985) (whether resident physician — clearly an employee of Boston City Hospital — "general rule that a resident is a servant of the hospital" — is still a servant of Boston City and thus protected by the Massachusetts Tort Claims Act when assigned to rotation at another area private hospital). This is supported by the fact that a physician must exercise his independent professional judgment when treating patients. Id.
The critical factor in determining whether the physician is an employee for the purposes of qualified immunity, is “whether a person is subject to the direction and control of a public employer.” Smith v. Steinberg, 395 Mass. at 667. If it can be shown that the employer directs the physician’s activities, and that the physician is under the control of the employer, then the physician will be considered a public employee for the purposes of the Act. Id. Factors considered by the court in defining the relationship of the physician and the employer include, whether a clinical director or other party controls the physician’s activities, controls the physician’s hours and work schedule, or supervises the physician’s activities. Hopper v. Callahan, 408 Mass. 621, 634 (1990). In addition the courts will look at whether the physician takes on patients of his own or solely treats patients assigned by the institution. Id.
Dr. Cooke did not control his day-to-day work activities. He took his direction as to what patients he saw and what cases he was assigned from either the Chair of the Department of Anesthesiology or the Director of Clinical Services. His only patients were those assigned to him by the Director of Clinical Services. In point of fact, on the date of the decedent’s surgery, Dr. Cooke was assigned to another case. When a pediatric patient presented for surgery, the anesthesiologist originally assigned to the decedent’s case, who had a specialty in pediatric anesthesiology, was reassigned to the pediatric case and Dr. Cooke was transferred to the decedent’s case. This occurred shortly before the decedent’s scheduled surgery.
In order to determine whether Dr. Cooke is a public employee, this Court must use the same standard as for determining whether a principal is liable for the acts of an agent under the doctrine of respondeat superior. McNamara v. Honeyman, 406 Mass. 43, 48 (1989). Even when the right to control the physician’s activities “may be very attenuated” it is nevertheless an important, and in this instance crucial, factor in determining the employment status of the physician. Dias v. Brigham Medical Associates, Inc., 438 Mass. 317, 322 (2002) (determining that physician an employee of private medical group practice by applying factors listed in Restatement (Second) of Agency §220(2) (1958) including, how the physician is paid— specifically whether the employee receives a W-2 from the employer — and “whether the parties themselves believe [that] they have created an employer-employee *719 relationship”). Ultimately, the question then, is whether, in treating the plaintiff, Dr. Cooke was “subject to the direction and control of the Commonwealth, acting through the medical school [or] through the group practice plan.” Smith v. Steinberg, 395 Mass. at 669.
Unlike the defendant physician in Smith however, Dr. Cooke did not set his work hours, did not have staff privileges at any other hospital, and did not see private patients. And, like the physician in McNamara, Dr. Cooke did not control “the details of his activities” including his work schedule, the patients he would treat, and his daily medical assignments. Nor, did he have any private patients or receive compensation based on the number of patients seen by him. In McNamara, the SJC upheld a jury verdict finding these factors sufficient to constitute employer control over the details of the physician’s activities and thus entitling the physician to qualified immunity under the Massachusetts Tort Claims Act. McNamara v. Honeyman, 406 Mass. at 48.
Dr. Cooke’s role on the date and time in question was pursuant to his academic assignment. On that date, as part of his regular assignment, Dr. Cooke was overseeing two resident anesthesiologists administering patients in two separate surgical procedures. These assignments were part of Dr. Cooke’s academic duties. Smith v. Steinberg, 395 Mass. at 669. (distinction between a physician’s academic function and his role as an attending physician). Work assignments, patient assignments, academic responsibilities and daily activities were within the control of Dr. Cooke’s immediate supervisors and, although Dr. Cooke clearly exercised his medical judgment during the course of treating patients, that alone does not compromise his status as a public employee under the Massachusetts Tort Claims Act. Dias v. Brigham Medical Associates, Inc., 438 Mass. at 321, n.6.

CONCLUSION

For the foregoing reasons, it is hereby ORDERED that defendant’s motion for summary judgment be GRANTED.

A purpose of the meetings was to discuss clinical cases and questions of hospital policy and procedure in order to establish consistency within the department.

In his affidavit, Dr. Vacanti does not dispute that Dr. Cooke exercised his independent judgment in treating his patients, but he does state that he, Dr. Vacanti, had the authority to require Dr. Cooke to practice medicine in accordance with the UMMC policies and procedures.