Agnes, A. J.
This is a civil action in which the plaintiff alleges medical malpractice based on a claim that on September 8,1998 the defendants negligently performed her cardiac catheterization, causing the perforation of her left ventricle. This matter is before the court on the defendant John A. Foley, M.D.’s motion for summary judgment under Mass.R.Civ.P. 56. Dr. Foley also moves for entry of final judgment under Mass.R.Civ.P. 54. For the reasons discussed below, the defendant’s motion for summary judgment is ALLOWED, but his motion for entry of final judgment is DENIED.
BACKGROUND
The essential facts are not in dispute. At all times relevant to this action, Dr. Foley was employed as a Cardiology Fellow by the University of Massachusetts Medical Center (“UMMC”). He was required to abide by the bylaws and policies of UMMC as well as by the policies and procedures of the UMMC residency programs. As a Fellow, Dr. Foley was under the supervision of its Director, Dr. Gerard P. Aurigemma, as well as under the supervision of the Division Director and the Chair of the Department. Dr. Aurigemma supervised Dr. Foley as to both academic and clinical matters. Dr. Aurigemma was responsible for reviewing Dr. Foley’s performance, as well as approving Dr. Foley’s work schedule, assignments, and requests for vacation and personal leave. Dr. Foley was required to treat all patients assigned to him by UMMC. Dr. Foley did not see patients privately at UMMC.
Dr. Foley was not paid directly by patients at UMMC or their insurers, nor did he directly bill the patients he treated at UMMC. Dr. Foley’s compensation was fixed according to procedures set forth by the Trustees of UMMC; it did not vary with the number of patients he treated or the hours he worked. Dr. Foley participated in the Commonwealth’s Contributory Retirement Plan and received health and dental benefits, as well as disability and life insurance eligibility, through the Commonwealth’s Group Insurance Commission.
On September 8, 1998, Dr. Foley was in his third year of the Cardiology Fellowship Program, and was assigned to a clinical rotation to work with Dr. Michael Malinics in the care and treatment of Margaret Hull (“Ms. Hull”). When treating patients at UMMC, Dr. Foley was supervised, directed and controlled by the attending physician who he worked with at the time. Dr. Malinics was an Assistant Professor of Medicine in UMMC’s Department of Cardiology. Ms. Hull was a private patient of Dr. Malinics. Dr. Malinics scheduled Ms. Hull’s cardiac catheterization procedure at UMMC. According to the affidavit submitted by Dr. Aurigemma, “(d]uring his care of Margaret Hull, Dr. Foley was under the supervision, direction and control of Dr. Malinics ...”
Ms. Hull alleges that Dr. Foley and Dr. Malinics, acting jointly, negligently advanced and/or placed the wire and catheter in her left ventricle, causing the ventricle to tear. Dr. Foley moves for summary judgment on the grounds that he is immune from liability as a public employee under the Massachusetts Tort Claims Act, G.L.c. 258.
DISCUSSION
1. Standard for Summary Judgment.
“Summary judgment is a ‘device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.’ ” Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983) (citations omitted). There are settled guidelines a trial judge must observe in passing on a motion for summary judgment.
Rule 56(c) of the Massachusetts Rules of Civil Procedure provides that a judge shall grant a motion for summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” In considering a motion for summary judgment, the court does not “pass upon the credibility of witnesses or the weight of the evidence (or) make (its) own decision of facts.” A court should not grant a party’s motion for summary judgment “merely because the facts he offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial.” Instead, the court should only “determine whether a genuine issue of material fact exist(s).” When the court considers the materials accompanying a motion for summary judgment, “the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion.” “Also, all doubt as to the existence of a *258 genuine issue of material fact must be resolved against the party moving for summary judgment.”
Attorney General v. Bailey, 386 Mass. 367, 370-71 (1982) (citations omitted).
The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). See also Highlands Ins. Co. v. Aerovox Inc., 424 Mass. 226, 232 (1997).
2. Whether the Defendant Physician Is Immune from Liability for Negligence under the Tort Claims Act
The Massachusetts Tort Claims Act, G.L.c. 258, represents a limited waiver of sovereign immunity with respect to certain agencies and institutions of the Commonwealth. There is no dispute here that the University of Massachusetts Medical Center (UMMC), as an institution established by an act of the Legislature and supported by state funds, is a “public employer” under G.L.c. 258, §1, see Robinson v. Commonwealth, 32 Mass.App.Ct. 6, 9 (1992), and thus liable for the negligent acts of its employees who work under its direction and control and who are for that reason considered “public employees.” G.L.c. 258, §2. The question in this case, therefore, is whether the defendant Dr. Foley is a “public employee” within the meaning of G.L.c. 258, §2.
Ms. Hull contends that Dr. Foley is not a public employee and that summary judgment is inappropriate because there is genuine dispute about material facts, viz., (1) whether Dr. Malinics was supervising Dr. Foley at the time of the alleged negligence; (2) the degree of independent medical judgment exercised by Dr. Foley during the cardiac catheterization; and (3) whether Dr. Foley exercised sufficient independent medical judgment during the procedure to place him outside of the protections afforded a public employee under G.L.c. 258.
In determining whether a person is a public employee, the relevant question “is whether a person is subject to the direction and control of a public employer.” Smith v. Steinberg, 395 Mass. 666, 667 (1985). Contrary to the defendant’s argument, this case is not answered simply by determining whether the defendant’s employer, UMMC, is liable under the doctrine of respondeat superior. In Dias v. Brigham Medical Associates, Inc., 438 Mass. 317 (2002), the Supreme Judicial Court observed that an employer is liable for the negligent acts of its employee under the doctrine of respondeat superior so long as those acts are committed in the scope of the employee’s employment, even though the employer did not have the right to control the manner and means of the allegedly negligent conduct. Id at 320-21. In the context of a medical malpractice case involving an allegedly negligent physician employed by a public employer hospital or other health care organization, the Dias court observed that it is necessary to determine whether the employer exercises direction and control over the physician employee to determine whether the physician employee is a “public employee” who enjoys immunity under G.L.c. 258, §2. However, the court explained that this analysis does not affect the application of the doctrine of respondeat superior for purposes of the liability of the public employer. Thus, UMMC could be liable for the negligence of a physician employee under the doctrine of respondeat superior in circumstances in which that physician employee also would be liable for his or her negligence.
The question of a physician’s status as a “public employee” under the Tort Claims Act is one of fact. Williams v. Hartman, 413 Mass. 398, 400 (1992), citing Rowe v. Arlington, 28 Mass.App.Ct. 389, 391 (1990). The mere fact that the UMMC is a public employer does not mean that all of its employees are “public employees.” McNamara v. Honeyman, 406 Mass. 43, 49 (1989). “A physician is not necessarily a public employee simply because a public entity pays his or her salary, provides a retirement fund, or manages a vacation schedule. In fact, we have noted that ‘the very nature of a physician’s function tends to suggest that in most instances [the physician] will act as an independent contractor,’ not a public employee." Williams v. Hartman, 413 Mass. 398, 400-401 (1992), quoting Kelley v. Rossi, 395 Mass. 659, 662 (1985). However, the Supreme Judicial Court has also recognized that, “[w]hile physicians exercise independent judgment, a physician can still be deemed a servant where the principal controls the details of the physician’s activities.” McNamara v. Honeyman, 406 Mass. 43, 48 (1989), relying on Kelly v. Rossi, 395 Mass. 659, 662 (1985).
The following factors are considered in determining whether a doctor is a public employee: (1) did he treat private patients, (2) was his income based on the number of patients he treated, and (3) did the employer regulate his work hours, assign the ward on which he worked, or select the patients he treated. McNamara, 406 Mass, at 48. However, the central question is whether the public employer “directs and controls the physician’s treatment of the patient.” Williams, 413 Mass, at 400.
Every physician who is licensed to practice medicine in this Commonwealth has the authority and the responsibility to exercise independent judgment, in *259 accordance with standards of good and accepted medical practice, on behalf of his or her patients. Every physician who is licensed to practice medicine in this Commonwealth also has the authority to perform medical procedures and to make diagnoses that may require a high degree of aptitude, judgment and skill. The performance of medical procedures and the exercise of independent judgment are essential components of the practice of medicine at every level. The mere fact that a physician performs a diagnostic test or procedure on his or her own, however, is not the test for determining whether that physician enjoys the status of a “public employee” for purposes of the Tort Claims Act. Rather, our case law establishes that the test is whether that physician is subject to the direction and control of the public employer. Williams, 413 Mass, at 400. Also, in order for the immunity doctrine to apply, it is not necessary that the public employer supervise or direct each discrete act performed by the public employee physician. Rather, the test is whether the defendant physician is subject to the direction and control of his or her employer in carrying out the duties that give rise to the claim of negligence.
In the present case, Dr. Foley presented evidence in support of his motion that, at the time of the alleged negligence, he was under the supervision and direction of Dr. Aurigemma and Dr. Malinics. See Affidavit by Dr. Aurigemma, paragraphs 4-9; Affidavit by Dr. Foley, paragraphs 3, 4, 6 and 9; Deposition of Dr. Malinics p. 17, line 11. In response, the plaintiff points to excerpts from the deposition testimony by Dr. Malinics and Dr. Foley that simply establishes that it was a “joint” decision by Dr. Foley and Dr. Malinics to use a straight wire rather than a J-curved wire (Dr. Malinics’ deposition at 21), that Dr. Foley “initiated” the procedure, and that both Dr. Foley and Dr. Malinics “participated” in the procedure (Dr. Malinics’ Deposition at 53).
As a general rule, resident physicians employed by a public hospital are public employees because the nature of their appointment is that they make treatment decisions under the direction and control of their public employer. See Williams, 413 Mass, at 401 n. 4, discussing Kelley v. Rossi, 395 Mass. 659, 663 (1985) (“[A] physician serving in a residency program is usually subject to the employer’s direction and control in the treatment of patients”). Accord, Quinn v. Kelly, Civil Action No. 92-3016, 2 Mass. L. Rptr. 401, 1994 Mass. Super. Lexis 657 (Worcester Superior Court, July 1, 1994) (Lenk, J.); Black v. Kivel, Civil Action No. 92-3489 (Worcester Superior Court, September 14, 1996) (Fecteau, J.). Contrast, Smith v. Steinberg, 395 Mass. 666 (1985). In this case, the fellowship program in which Dr. Foley was employed comes under the same rules as those that apply to residency programs. Affidavit by Dr. Aurigemma, para. 4. Like residency programs for physicians just out of medical school, the fellowship program is both an academic and a clinical program. Affidavitby Dr. Aurigemma, para. 4. As a general rule, physicians in such a program should be treated as residents for purposes of the immunity doctrine under G.L.c. 258, §2. See Martin v. Desai, Civil Action No. 93-1005 (Worcester Superior Court April 10, 1997) (Sweeney, J.). The fact that the plaintiff happened to be the private patient of Dr. Malinics does not alter the status of Dr. Foley as a public employee. See Derry v. Blejan-Schram, M.D., Civil No. 97-1720 (Worcester Superior Court, March 13, 2001) (Toomey, J.) (12 Mass. L. Rptr. 740) (resident was public employee while on rotation at private hospital because was under no significant direction or control by the private hospital where the negligence occurred). Furthermore, the mere fact that the attending physician who supervises the public employee physician is not a public employee does not compromise the public employee status of the resident who is also subject to the supervision of the public employer. See Williams v. Bresnahan, 27 Mass.App.Ct. 191, 192-93 (1989). Moreover, there is no principled reason why a physician such as Dr. Foley cannot be a public employee in the context of his or her employment for a public employer and a private employee without immunity when assigned to work and treat patients in a private hospital or health care facility. Compare Kelly v. Rossi, supra; Trainor v. Gulati, M.D., Civil No. 98-2428B (Worcester Super. Ct. January 8, 2002) (Toomey, J.) (14 Mass. L. Rptr. 169).
The undisputed facts establish that Dr. Foley’s treatment of Ms. Hull occurred at UMMC, a public employer; he was paid a salary by UMMC that did not depend on the number of patients he saw or the hours he worked; his work and vacation schedule was subject to the approval of UMMC; he had no admitting privileges at UMMC and no discretion over the patients he was assigned to treat at UMMC; he was under the supervision, direction and control of Dr. Aurigemma who served as Director of the Cardiology Fellowship Program; he reported to Dr. Aurigemma on both academic and clinical matters, and his work performance was regularly reviewed by UMMC which had the right to discharge him for poor performance; he was, at all times, required to abide by the policies and procedures of the UMMC and the UMMC residency program; he was assigned to work with and under the direction of Dr. Malinics according to a schedule established by UMMC.
There is no evidence in the record before me that Dr. Foley’s treatment and care of Ms. Hull during the cardiac catheterization procedure was free from the direction and control of UMMC. Even if Dr. Foley, as a board certified physician, is regarded as a highly trained specialist qualified to act, in other contexts, without supervision, direction or control, *260 he did not act independently of the direction, supervision and control of UMMC in the circumstances of this case, see Johnson v. Cooke, Civil Action No. 2000-0050 (Worcester Superior Court January 21, 2003) (Fecteau, J.) (15 Mass. L. Rptr. 717), and thus he should be deemed to be a public employee. Accordingly, Dr. Foley is entitled to summary judgment.
3. Defendant’s Motion for Entry of Separate and Final Judgment
Trial judges should proceed cautiously when presented with motions for entry of separate and final judgment under Mass.R.Civ.P. 54(b).
Because of the bedrock policy against premature and piecemeal appeals, the Supreme Judicial Court has declared that we do expect strict compliance in dealing with the narrow exception to that policy created by rule 54(b). Consequently, certifications under rule 54(b) should not be granted routinely or as a courtesy or accommodation to counsel. Overly generous use of rule 54(b)... can create a minefield for litigants and appellate courts alike, and does not further the interests of sound judicial administration. Therefore, the court’s rule 54(b) discretion should be exercised sparingly, and, when the dismissed and the surviving claims are factually and legally overlapping or closely related, such a fragmentation of the case is to be avoided except in unusual and compelling circumstances. In short, rule 54(b) certification is a special dispensation, which should be used only in the infrequent harsh case. Rule 54(b) was not meant to animate essentially fragmentary proceedings or to be employed in the absence of sufficiently compelling circumstances . . . Certifications that fail to recognize the limited and exceptional function of rule 54(b) and to consider the judicial administrative interests involved result in a substantial waste of already scarce judicial resources.
Long v. Wicket, 50 Mass.App.Ct. 380, 392-93 (2000) (citations and quotations omitted). This is not an appropriate case in which to exercise judicial discretion in favor of the entry of separate and final judgment.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant John A. Foley, M.D.’s motion for summary judgment is ALLOWED. It is further ORDERED that defendant John A. Foley’s motion for entry of final judgment is DENIED.