McCann, J.
This is a wrongful death action in which the plaintiff alleges malpractice based on a claim that, on February 26, 1997, the defendants negligently treated her husband, Alan Johnson, by continuing to operate on him after he had suffered cardiac arrest during the surgical procedure, thus causing him to enter a vegetative state requiring mechanical life support. This matter is before the court on the defendant Chandra Joshi, M.D.’s motion for summary judgment under Mass.R.Civ.P. 56 and entry of separate and final judgment under Mass.R.Civ.P. 54. For the reasons discussed below, the defendant’s motion for summary judgment is ALLOWED and his motion for separate and final entry is DENIED.

BACKGROUND

The following facts are not in dispute. At all times relevant to this action, Dr. Joshi was employed by the University of Massachusetts Medical Center (“UMMC”) as an anesthesia resident. Mr. Johnson was treated at UMMC, a public employer, when the alleged negligence occurred. Dr. Joshi was the anesthesia resident involved in Mr. Johnson’s treatment during the surgery when the alleged negligence occurred. Dr. Paul Cooke was the attending anesthesiologist during Mr. Johnson’s surgery. Dr. Joshi had no admitting privileges and no private patients. Dr. Joshi was paid a fixed stipend, independent of the number of patients treated by him. He never billed patients directly nor received payments directly from patients
As her central argument, Ms. Johnson deems the following facts to constitute merely evidence of administrative control, and as such, while not denying their accuracy, denies their probative value on the controlling issue of direction and control: (1) Dr. Joshi’s work schedule and vacation/personal leave schedule was controlled by his UMMC supervisors; (2) he was assigned to treat Mr. Johnson, but he had no discretion as to whom he would treat on any given day; (3) Dr. Joshi participated in the Commonwealth’s retirement fund, and was paid and received benefits through UMMC; and (4) his only office was one assigned to him by UMMC.
Ms. Johnson denies the following “facts” asserted by Dr. Joshi on the grounds that he did not back them up with supporting documentation: (1) Dr. Joshi was obligated to abide by the rules and policies of the residency program; (2) he was subject to the supervision and direction of Dr. Verghese who had the authority at UMMC to supervise and direct him; (3) his work performance was evaluated by Dr. Verghese, the Director of the Anesthesia Residency Program at UMMC; (4) he was required to attend department meetings in order to get advice on clinical and academic matters was assigned to him; (5) he worked under the general supervision of the Department Chair as well as Dr. Verghese, and any attending physician assigned to the same patient for any given procedure; and (6) Dr. Joshi practiced medicine only at UMMC. However, under Mass.R.Civ.P. 56(e), if Dr. Joshi’s supporting affidavits are based on personal knowledge and allege facts with sufficient specificity, no supporting documentation other than documents referred to in the affidavits, are required to be produced.

DISCUSSION

1. Summary Judgment Standard
“Summary Judgment is a ‘device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.’ ” Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983) (citations omitted). There are settled guidelines a trial judge must observe in passing on a motion for summary judgment.
Rule 56(c) of the Massachusetts Rules of Civil Procedure provides that a judge shall grant a motion for summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of *518 law.” In considering a motion for summary judgment, the court does not “pass upon the credibility of witnesses or the weight of the evidence (or) make (its) own decision of facts.” A court should not grant a party’s motion for summary judgment “merely because the facts he offers appear more plausible than those tendered in the opposition, or because it appears that the adversary is unlikely to prevail at trial.” Instead, the court should only “determine whether a genuine issue of material fact exist(s).” When the court considers the materials accompanying a motion for summary judgment, “the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion.” “Also, all doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment.”
Attorney General v. Bailey, 386 Mass. 367, 370-71 (1982) (citations omitted).
The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). See also Highlands Ins. Co. v. Aerovox Inc., 424 Mass. 226, 232 (1997). Supporting and opposing affidavits “shall be made on personal knowledge . . .” Mass.R.Civ.P. Rule 56(e).
2. Public Employee Immunity
The Massachusetts Tort Claims Act, G.L.c. 258, governs tort claims brought against agencies and institutions of the Commonwealth. Under G.L.c. 258, §1, which defines the terms “public employer,” the University of Massachusetts Medical Center is indisputably a “public employer” because it is an institution established by an act of the Legislature and is supported by state funds, see Robinson v. Commonwealth, 32 Mass.App.Ct. 6, 9 (1992), and because it is an institution that “exercises direction and control over the public employee...”
Under G.L.c. 258, §2, a public employer “shall be liable for injury . . . caused by the negligent or wrongful act... of any public employee while acting in the scope of his . . . employment.” The question in this case, therefore, is whether Dr. Joshi is a “public employee” within the meaning of G.L.c. 258, §2.
The plaintiff contends that Dr. Joshi is not a public employee and that summary judgment is inappropriate because there is a genuine dispute about a material fact, viz., whether UMMC exercised control or direction over Dr. Joshi’s treatment of Mr. Johnson or whether he exercised his own independent judgment.
In determining whether a person is a public employee, the relevant question “is whether a person is subject to the direction and control of a public employer.” Smith v. Steinberg, 395 Mass. 666, 667 (1985). In Smith, it was held that the Doctor was not a public employee because he controlled his own work hours, where he worked, and who he treated. The court further noted that the doctor treated patients not pursuant to any academic function, but, rather in his role as a physician. Smith, 395 Mass, at 669.
The mere fact that the University of Massachusetts is a public employer does not mean that all of its employees are “public employees.” McNamara v. Honeyman, 406 Mass. 43, 49 (1989). “A physician is not necessarily a public employee simply because a public entity pays his or her salary, provides a retirement fund, or manages a vacation schedule. In fact, we have noted that ‘the very nature of a physician’s function tends to suggest that in most instances [the physician] will act as an independent contractor,’not apublic employee.” Williams v. Hartman, 413 Mass. 398, 400-01 (1992), quoting Kelly v. Rossi, 395 Mass. 659, 662 (1985). However, the Supreme Judicial Court has also recognized that, “[w]hile physicians exercise independent judgment, a physician can still be deemed a servant where the principal controls the details of the physician’s activities.” McNamara v. Honeyman, 406 Mass. 43, 48 (1989), relying on Kelly v. Rossi, 395 Mass. 659, 662 (1985). Therefore, the question of a physician’s status as a “public employee” under the Tort Claims Act is a question of fact. Williams v. Hartman, 413 Mass. 398, 400 (1992), citing Rowe v. Arlington, 28 Mass.App. Ct. 389, 391 (1990). In order for the immunity doctrine to apply, the public employer need not supervise or direct each discrete act performed by the public employee physician. Rather, the central question is whether the public employer “directs and controls the physician’s treatment of the patient.” Williams, 413 Mass, at 400. In Williams, the Doctor was held not to be a public employee because he alone made medical treatment decisions for his patients, established his own work schedule, and controlled his own day-today activities.
As a general rule, resident physicians employed by a public hospital are public employees because the nature of their appointment is that they make treatment decisions under the direction and control of their public employer. See Williams, 413 Mass, at 401 n.4, discussing Kelly v. Rossi, 395 Mass. 659, 663 (1985) (“[A] physician serving in a residency program is usually subject to the employer’s direction and control in the treatment of patients”). Accord, Quinn v. Kelly, Civil Action No. 92-3016, 2 Mass. L. Rptr. 401, 1994 Mass.Super.Lexis 657 (Worcester Super.Ct. July 1, 1994 (Lenk, J.); Black v. Kivel, Civil Action No. 92-34898 (Worcester Super.Ct. September 14, 1996) (Fecteau, J.). Contrast, Smith v. Steinberg, 395 Mass. 666 (1985).
*519 In Smith, the doctor was found to have treated patients privately and to control his own work schedule, two factors which contributed to the determination that he was not a public employee. Similarly, in Williams, the doctor was found to have control over his own work schedule which was a contributing factor in the court’s determination that he was not a public employee. Therefore, in this case, the fact that Dr. Joshi did not see or treat patients privately and did not control his own work schedule are factors which indicate he should be deemed immune from liability as a public employee. However, the fact that Dr. Joshi was a resident physician at the time he treated Mr. Johnson and the fact that the attending physician was present and acting in his supervisory capacity during the surgery is sufficient evidence, as a matter of law, of Dr. Joshi’s status as a public employee under G.L.c. 258. See generally, Williams v. Hartman, 413 Mass. 398, 401 (1992), discussing Kelly v. Rossi, 395 Mass. 659, 663 (1985); Williams v. Bresnahan, 27 Mass.App.Ct. 191 (1989); Hernandez v. Mead, Civil Action No. 97-2709A (Worcester Super.Ct. May 4, 2001) (Toomey, J.) (13 Mass. L. Rptr. 215); Derry v. Blejan-Schram, Civil Action No. 97-1720 (Worcester Super.Ct. March 12, 2001) (Toomey, J.) -(12 Mass. L. Rptr. 740); Black v. Kivel, Civil Action No. 92-34898 (Worcester Super.Ct. September 14, 1996) (Fecteau, J.); Quinn v. Kelly, Civil Action No. 92-3016 (Worcester Super.Ct. July 1, 1994) (Lenk, J.) (2 Mass. L. Rptr. 401).
3. Defendant’s Untimely Filing of Summary Judgment Motion
While this court concedes that Dr. Joshi should have filed his summary judgment within the tracking order deadline, Mass.R.Civ.P. 56(b) allows a defendant to move for summary judgment at any time. The Standing Order 1 -88 should not be read to supercede the Massachusetts Rules of Civil Procedure, “[with respect to Standing Order 1 -88], "[supplemental court rules ‘not inconsistent’ with the Massachusetts Rules of Civil Procedure are permitted." Sullivan v. Iantosca, 409 Mass. 796, 801 (1991). Furthermore, the late filed motion was filed well before the scheduled trial date. Therefore, not only is Ms. Johnson not prejudiced by this delay, nor is the underlying purpose of Standing Order 1-88, the speedy and just processing of civil cases, compromised by hearing Dr. Joshi’s summary judgment motion and resolving the issue of his liability prior to trial.
4. Dr. Joshi’s Motion for Entry of Separate and Final Judgment
Trial judges should proceed cautiously when presented with motions for entry of separate and final judgment under Mass.R.Civ.P. 54(b).
Because of the bedrock policy against premature and piecemeal appeals, the Supreme Judicial Court has declared that we do expect strict compliance in dealing with the narrow exception to the policy created by rule 54(b). Consequently, certifications under rule 54(b) should not be granted routinely or as a courtesy or accommodation to counsel. Overly generous use of rule 54(b) . . . can create a minefield for litigants and appellate courts alike, and does not further the interests of sound judicial administration. Therefore, the court’s rule 54(b) discretion should be exercised sparingly, and, when the dismissed and the surviving claims are factually and legally overlapping or closely related, such a fragmentation of the case is to be avoided except in unusual and compelling circumstances. In short, rule 54(b) certification is a special dispensation, which should be used only in the infrequent harsh case. Rule 54(b) was not meant to animate essentially fragmentary proceedings or to be employed in the absence of sufficiently compelling circumstances . . . Certifications that fail to recognize the limited and exceptional function of rule 54(b) and to consider the judicial administrative interests involved result in a substantial waste of already scarce judicial resources.
Long v. Wicket, 50 Mass.App.Ct. 380, 392-93 (2000) (citations and quotations omitted).
This is not an appropriate case in which to exercise judicial discretion in favor of the entry of separate and final judgment.

ORDER

For the foregoing reasons, it is hereby ORDERED that defendant Chandra Joshi M.D.’s motion for summary judgment is ALLOWED and his motion for entry of separate and final judgment is DENIED.