Agnes, A.J.
1. This is a medical malpractice action in which the plaintiff, Steven C. Litchfield (“plaintiff’), alleges that the defendant, Dr. James C. Bayley (“defendant”) was negligent in his treatment and care of the plaintiff who was a patient at the University of Massachusetts Memorial Medical Center. At the time of the alleged negligence, November 19, 1997, the defendant was an Associate Professor of Orthopedic Surgery and an attending physician in the Department of Orthopedics at the University of Massachusetts. The plaintiffs claim arises out of an injury he alleges he suffered during a surgical procedure known as a discectomy which was performed on the plaintiff by the defendant and as a result of which calcified material was removed from the plaintiffs spine in an effort to relieve the plaintiffs back pain. The plaintiff claims that his pain and back problems worsened following the procedure, and that this was the result of the defendant’s negligence in performing the procedure.
2. Many of the facts in this case are undisputed facts. These include the fact that in 1997 the defendant was an attending physician in the Department of Orthopedics at the Medical Center and an Associate Professor at the University of Massachusetts Medical School. He was required to abide by the policies and procedures of the Medical School and the Board of Trustees of the University. He was paid a fixed salary that did not depend on the number of patients treated. He did not bill his patients, did not receive any payments directly from his patients. He was enrolled in state retirement and benefits plans. He did not have discretion over which patients he would treat, was required to treat patients to whom he was assigned, and did not have his own private patients. Furthermore, the defendant’s hours of employment and office space were determined by his Department head, Dr. Arthur M. Pappas, who also established his clinical schedule and responsibilities. The defendant had to attend meetings of the Department scheduled by Dr. Pappas. In short, in one sense the defendant certainly has demonstrated that he was a public employee, i.e., a person whose salary was paid for by a public employer, a person who performed duties for a public employer, and a person who in some respects was under the control of a public employer. However, these are not the only material facts because the decisional law of this Commonwealth makes it clear that public employment in a generic sense is not determinative of the question whether a physician was a “public employee” employed by a “public employer” and thus immune from individual liabiliiy within the meaning of the Massachusetts Tort Claims Act, G.L.c. 258, §2. See McNamara v. Honeyman, 406 Mass. 43, 49 (1989). “In the specific case of a physician, we examine whether a public employer directs and controls the physician’s treatment of the patient.” Williams v. Hartman, 413 Mass. 398, 400 (1992). The defendant’s reliance on Dias v. Brigham Medical Associates, Inc., 438 Mass. 317 (2002), is misplaced. In Dias, the Court explained that it was dealing with “the common-law analysis of respondeat superior” and not the analysis of whether a physician was a public employee under the Tort Claims Act which, unlike the common-law doctrine, makes the employee immune from liability for negligence. See id. at 321.
3. The plaintiff points out that the defendant did not undertake the treatment of the plaintiff on assignment from any superior, but rather on the basis of a referral by another physician. See exhibit 2 at 7-8. Also, the plaintiff points out (with appropriate citations to the record) that “in his Answers to Interrogatories and throughout his deposition, Dr. Bayley described what he did by way of treatments of his patient, Mr. Litchfield, without any suggestion whatsoever that he was under anyone’s control or direction.” Plaintiffs Memorandum in Opposition at 3. The plaintiff notes that this same pattern is evidenced by an examination of the defendant’s office notes of visits by the plaintiff from the date of the surgery in November 1997 through October 5, 1999. Plaintiffs Memorandum in Opposition at 4. Ultimately, the defendant’s *254 claim that he was a public employee under G.L.c. 258, §2 turns on the significance of a statement in the affidavit of Dr. Pappas, his Department Head: “Although Dr. Bayley generally exercised independent judgment in his treatment of patients, that judgment was always subject to the right of ultimate control by the University of Massachusetts.” Affidavit of Dr. Pappas, para. 13 (exhibit C to the Defendant’s Memorandum of Law).
4.This court recently had occasion to review the applicable law in this area in determining whether a physician working in a post-residency fellowship program at the University of Massachusetts Medical Center was a public employee in Hull v. Foley, 17 Mass. L. Rptr. 187 (2004), Worcester Superior Court No. 01-1188 (January 12, 2004). There, the court noted that
the Supreme Judicial Court has also recognized that “[w]hile physicians exercise independent judgment, a physician can still be deemed a servant where the principal controls the details of the physician’s activities.” McNamara v. Honeyman, 406 Mass. 43, 48 (1989), relying on Kelly v. Rossi, 395 Mass. 659, 662 (1985) . . . [T]he central question is whether the public employer “directs and controls the physician’s treatment of the patient.” Williams, 413 Mass. at 400 . . . [I]n order for the immunity doctrine to apply, it is not necessary that the public employer supervise or direct each discrete act performed by the public employee physician. Rather, the test is whether the defendant physician is subject to the direction and control of his or her employer in carrying out the duties that give rise to the claim of negligence.
Hull v. Foley, supra. “In order for the immunity doctrine to apply, the public employer need not supervise or direct each discrete act performed by the public employee physician. Rather, the central question is whether the public employer ’’directs and controls the physician’s treatment of the patient." Johnson v. Cooke, 17 Mass. L. Rptr. 517, Worcester Superior Court No. 2000-0050 (March 1, 2004) (McCann, J.), quoting Williams, supra, 413 Mass. at 400. In Johnson v. Cooke, supra, the court examined appellate and trial court cases in the area and concluded that when a resident physician acts under the supervision of an attending physician in a setting such as the University of Massachusetts Medical Center he or she will be regarded as a public employee even though residents are fully licensed and both capable of and responsible for exercising independent medical judgment for and on behalf of patients. Similarly, in Hull v. Foley, supra, this court reached the same result with respect to a physician who was employed in a fellowship program.
In this case, the fellowship program in which Dr. Foley was employed comes under the same rules as those that apply to residency programs. Affidavit by Dr. Aurigemma, para. 4. Like residency programs for physicians just out of medical school, the fellowship program is both an academic and a clinical program. Affidavit by Dr. Aurigemma, para. 4. As a general rule, physicians in such a program should be treated as residents for purposes of the immunity doctrine under G.L.c. 258, §2 ... Even if Dr. Foley, as a board certified physician, is regarded as a highly trained specialist qualified to act, in other contexts, without supervision, direction or control, he did not act independently of the direction, supervision and control of UMMC in the circumstances of this case.
5. However, in the present case, unlike in Johnson v. Cooke, supra, and Hull v. Foley, supra, there is evidence that the defendant acted to treat and care for the plaintiff, including the provision of pre-operative, operative and post-operative care, on the basis of his own independent judgment and without any direction or supervision from the public employer. Thus, viewing the facts in the light most favorable to the plaintiff, notwithstanding the administrative control exercised by the public employer over the activities of the defendant and the general assertion by Dr. Pappas, his Department Head, that the public employer had the capacity to exercise supervision and control over the defendant, there is a genuine question of fact about whether the defendant was under the direction or supervision of his public employer in the performance of the plaintiffs surgery which is at the core of his negligence claim. See Williams v. Hartman, supra, 413 Mass. at 400-01; Smith v. Steinberg, supra, 395 Mass. at 668.
As this court observed in Latour v. Degrout, 16 Mass. L. Rptr. 351, Worcester Superior Court No. 001937B (Apr. 30, 2003) (Page, J.):
A jury could reasonably find, based on the factual record that Dr. DeGroot exercised a great deal of discretion over his day to day activities, as well as his treatment of Latour, and that any supervision on Dr. Pappas’ part was limited to general oversight of essentially administrative matters. Additionally, it is worth noting that in Moran v. Caulkins, Civil No. 971310 (Worcester Super.Ct. Dec. 19, 2000) (Butler, J.) (12 Mass. L. Rptr. 667), this Court denied the defendant UMMC physician’s motion for summary judgment on facts quite similar to the case at bar. Other Superior Court judges have also declined to grant summary judgment to UMMC staff members in situations factually analogous to this case. See, e.g., Mahoney v. Bors-Koefoed, Civil No. 96-666A (Worcester Super.Ct. May 24, 2000) (Toomey, J.) (11 Mass. L. Rptr. 608); Maloney v. Herrmann, Civil No. 951809B (Worcester Super.Ct. Mar. 23, 1998) (Fecteau, J.). Therefore, whether UMMC had direction and control over Dr. DeGroot’s actions at the time of his allegedly negligent treatment of Latour remains a genuine issue of material fact.
ORDER
6. For the above reasons, the defendant’s motion for summary judgment is DENIED.