SARAH WILLIAMS, administratrix,[1] *vs.* MARK HARTMAN.

Suffolk. March 3, 1992. - August 14, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Massachusetts Tort Claims Act. Governmental Immunity. Doctor,* Employment. *Medical Malpractice,* Public employee. *Negligence,* Public employee, Independent contractor, Medical malpractice. *Practice, Civil,* Summary judgment. *Civil Rights,* Mental health. *Due Process of Law,* Mental health. *Mental Health. Words,* "Public employee," "Independent contractor."

On claims of negligence and wrongful death in connection with the death of the plaintiff's daughter who was a patient in a ward supervised by the defendant physician at a mental health facility operated by the Department of Mental Health, the judge correctly denied the defendant's motion for summary judgment where, with regard to whether the defendant was a public employee and therefore immune from liability, the record contained a genuine issue of material fact as to the defendant's employment status. [400-401] O'CONNOR, J., with whom WILKINS & GREANEY, JJ., joined, concurring.

On a Federal civil rights claim under 42 U.S.C. § 1983 (1982) arising from the death of a patient in a ward supervised by the defendant physician at a mental health facility operated by the Department of Mental Health, the defendant was entitled to summary judgment where, in light of the plaintiff's admission on appeal that her decedent had been admitted voluntarily to the State mental health facility, the plaintiff was precluded from asserting the decedent's Federal due process right to adequate medical care that the defendant allegedly violated. [401-405] O'CONNOR, J., with whom WILKINS & GREANEY, JJ., joined, dissenting.

CIVIL ACTION commenced in the Superior Court Department on June 4, 1986.

---

[1] Of the estate of Brenda Sue Williams, and individually. We refer herein to a single plaintiff.

A motion for summary judgment was heard by *John C. Cratsley*, J.

Leave to prosecute an interlocutory appeal was allowed in the Appeals Court by *Frederick L. Brown*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael J. McCormack*, Special Assistant Attorney General (*Marc LaCasse* with him) for the defendant.

*Mary M. McGoldrick* for the plaintiff.

LIACOS, C.J. On June 4, 1986, the plaintiff, Sarah Williams, filed a complaint against the defendant, Dr. Mark Hartman, asserting claims of negligence and wrongful death in connection with the death of her daughter, Brenda Sue Williams. The plaintiff also brought a claim pursuant to 42 U.S.C. § 1983 (1988), alleging that the defendant had violated the Federal constitutional rights of the decedent. The defendant moved for summary judgment on all claims on March 28, 1989, and, following a hearing, the motion was denied on June 16, 1989.[2] A single justice of the Appeals Court granted the defendant leave to file an interlocutory appeal from the denial of his summary judgment motion.[3] We transferred the case to this court on our own motion. We hold that the judge was correct in denying summary judgment to the defendant on the State law claims, but that, in light of the plaintiff's admission before this court, summary judgment must be granted to the defendant on the § 1983 claim.

For purposes of the present appeal, we need only state the basic facts of the case. The decedent was born on October 15, 1953, and suffered from several physical and mental disa-

[2]The defendant filed a motion for reconsideration on July 18, 1989, and that motion was denied on August 30, 1989.

[3]The plaintiff named four other defendants in her complaint, but those defendants are not parties to this appeal.

. Because the defendant argued that he had qualified immunity from the § 1983 claim, the Appeals Court correctly granted interlocutory review. See *Hopper* v. *Callahan*, 408 Mass. 621, 623-624 (1990). In these circumstances, the order granting interlocutory review of the State law claims was appropriate as well. See *id.* at 624.

bilities. In December, 1975, she was involuntarily committed for ten days to the Solomon Carter Fuller Mental Health Center (Fuller), a mental health facility operated by the Department of Mental Health. While the record is not clear, it appears she remained a patient on a voluntary basis until her death in November, 1983. See note 8, *infra*. The defendant was the medical director of Fuller's ward 6, where the decedent resided, from January 10, 1983, to June 6, 1985. He supervised the medical care and treatment of the decedent. In 1983, the decedent's medical condition deteriorated substantially, as a result of which she was transferred to Boston City Hospital on November 5, 1983. She died soon thereafter from multiple medical complications.

1. *Public employee immunity.* In support of his motion for summary judgment, the defendant argued only that he was a public employee and was therefore immune from liability under the State law claims. See G. L. c. 258, § 2 (1990 ed.) ("no . . . public employee . . . shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment"). Whether an individual is a public employee is a question of fact. *Rowe* v. *Arlington*, 28 Mass. App. Ct. 389, 391 (1990). "The basic question is whether a person is subject to the direction and control of a public employer." *Smith* v. *Steinberg*, 395 Mass. 666, 667 (1985). See G. L. c. 258, § 1 (1990 ed.). In the specific case of a physician, we examine whether a public employer directs and controls the physician's treatment of the patient. See *id.* at 669. See also *Hopper* v. *Callahan*, 408 Mass. 621, 634 (1990). A physician is not necessarily a public employee simply because a public entity pays his or her salary, provides a retirement fund, or manages a vacation schedule. In fact, we have noted that "the very nature of a physician's function tends to suggest that in most instances [the physician] will

act as an independent contractor," not a public employee. *Kelley* v. *Rossi*, 395 Mass. 659, 662 (1985).[4]

In reviewing the defendant's motion for summary judgment, "[w]e must, of course, credit the record facts that are most favorable to the plaintiff[ ] . . . ." *Hopper, supra* at 628. Applying this standard in the instant case, we agree with the motion judge that the record contains a genuine issue of material fact as to the defendant's employment status. The plaintiff entered in the record the deposition of the defendant's supervisor, Dr. George Papanek, who testified that neither he nor anyone else at Fuller controlled or directed the defendant's day-to-day activities. Dr. Papanek indicated that the defendant alone made the medical decisions in connection with the treatment of his patients. The supervisor further testified that the defendant established his own work schedule. Because the defendant offered evidence in support of his position that he was a public employee, there was a dispute of material fact that must be resolved by the trier of fact. The judge correctly denied the motion for summary judgment.[5]

2. *Violation of the decedent's Federal constitutional rights.* The plaintiff brought a claim against the defendant pursuant to 42 U.S.C. § 1983,[6] alleging that the defendant

---

[4]We have recognized "that a resident [physician] is a servant of the hospital." *Kelley* v. *Rossi*, 395 Mass. 659, 663 (1985). That is, a physician serving in a residency program is usually subject to the employer's direction and control in the treatment of patients. Dr. Hartman does not, on this record, fall within that principle.

[5]The defendant argues on appeal that the judge should have struck three exhibits offered by the plaintiff with her opposition to the defendant's motion for reconsideration of the summary judgment motion. The defendant's motion for reconsideration merely presented additional facts without eliminating the existence of a dispute over the nature of his employment. Thus, there was no need to consider the plaintiff's exhibits. We note further that judges may consider a broad range of materials in connection with a motion for summary judgment. See *Correllas* v. *Viveiros*, 410 Mass. 314, 317 (1991).

[6]Section 1983 reads in pertinent part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of

violated the decedent's Federal due process right to adequate medical care.[7] In his motion for summary judgment, the defendant argued inter alia that the decedent had no such right, and that the actions cited in the complaint amounted at most to negligence, not to a Federal constitutional violation.

We focus our analysis on the defendant's contention that the decedent had no Federal due process right to adequate medical care. In *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991), we held that "a party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass. R. Civ. P. 56 (c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." In his motion for summary judgment, the defendant merely asserted that the decedent had no Federal constitutional right; he did not support his assertion with any references to the materials listed in rule 56 (c) ("pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any"). Accordingly, the judge was correct, on the record before him, to deny summary judgment on this ground. See *id.* at 714.

Before this court, however, the plaintiff has admitted to a fact that defeats her § 1983 claim. During oral argument, and again in a postargument letter, the plaintiff admitted that the decedent was committed voluntarily to Fuller follow-

---

Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[7]The plaintiff does not claim a violation of the decedent's rights under the State Constitution. Our analysis in the instant appeal concerns only the decedent's constitutional rights under the Fourteenth Amendment to the United States Constitution.

ing a ten-day period of involuntary commitment.[8] See G. L. c. 123, § 12 (*d*), as appearing in St. 1971, c. 760, § 10.[9] The significance of the admission lies in the fact that a patient who is voluntarily committed to a State mental health facility does not possess the same Federal constitutional rights as an involuntarily committed patient. Individuals who are involuntarily committed have a constitutional right under the Fourteenth Amendment's due process clause to adequate medical care. See *Youngberg* v. *Romeo*, 457 U.S. 307, 315 (1982); *Hopper, supra* at 625. In *DeShaney* v. *Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 199-200 (1989), the Supreme Court explained the rationale behind the *Youngberg* holding:

> "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf — through incarceration, institutionalization, or other similar restraint of personal liberty — which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means."

---

[8]We assume from the plaintiff's representations that the decedent's status was "conditional voluntary." That status is initiated by the applicant and does not apply to a patient placed in the facility by court order. See 104 Code Mass. Regs. § 3.04 (2) (a) (1978).

[9]General Laws c. 123, § 12 (*d*), as appearing in St. 1971, c. 760, § 10, read as follows:

> "A person shall be discharged at the end of the ten-day period unless the superintendent applies for a commitment under the provisions of sections seven and eight of this chapter or the person remains on a voluntary status."

In 1986, former G. L. c. 123 was deleted and a new version was inserted. See St. 1986, c. 599, § 38.

In short, it is the State's holding of a mental health patient against his or her will that gives rise to the constitutional right to adequate medical care. We read *DeShaney* to imply that the voluntarily committed patient, that is, the person who has not been and is not being held against his or her will, has no Federal constitutional right to adequate medical care. See *Monahan* v. *Dorchester Counseling Ctr.*, 961 F.2d 987, 991 (1st Cir. 1992) ("Because the state did not commit [the patient] involuntarily, it did not take an 'affirmative act' of restraining his liberty, an act which may trigger a corresponding due process duty to assume a special responsibility for his protection"); *Fialkowski* v. *Greenwich Home for Children, Inc.*, 921 F.2d 459, 465 (3d Cir. 1990) ("the substantive rights recognized in *Youngberg* are limited to persons whose personal liberty has been substantially curtailed by the state"); *Jordan* v. *Tennessee*, 738 F. Supp. 258, 260 (M.D. Tenn. 1990). In addition, the fact that a voluntarily committed patient's disabilities may prevent him or her from leaving the facility does not give rise to *Youngberg* rights, so long as this condition is "not attributable to the state's having taken [the patient] into custody involuntarily." See *Monahan, supra* at 992.

Because the decedent was committed voluntarily to Fuller, she did not possess the Federal constitutional rights that the defendant allegedly violated. A trial on this matter would serve no purpose, as there is no dispute over the dispositive fact of the decedent's status at Fuller. The plaintiff herself informed the court that the decedent had been voluntarily committed, and she reaffirmed her admission in her post-argument letter to the court.[10] Cf. *White* v. *Peabody Constr. Co.*, 386 Mass. 121, 127-128 (1982) (summary judgment granted on basis of plaintiffs' admission before motion

---

[10]The plaintiff argued incorrectly in the letter that voluntarily and involuntarily committed patients possess the same Federal constitutional right to adequate medical care.

judge). As a practical matter, we hold that the defendant is entitled to summary judgment on the § 1983 claim.[11]

3. *Conclusion.* We remand the case to the Superior Court for entry of an order granting the defendant summary judgment on the § 1983 claims and denying summary judgment on the State law claims.

*So ordered.*

O'CONNOR, J. (concurring in part and dissenting in part, with whom Wilkins and Greaney, JJ., join). In support of his motion for summary judgment on the negligence and wrongful death claims, the defendant submitted materials, pursuant to Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974), which, had they been uncontradicted, would have shown that the defendant was an employee of the Commonwealth subject to the control of his superiors, and therefore immune from liability. Thus, under rule 56 (c), the burden shifted to the plaintiff to produce countervailing rule 56 (c) materials. Because the plaintiff did so, I agree with the court that the judge properly denied the defendant's motion for summary judgment on the negligence and wrongful death claims.

I do not agree, however, that "in light of the plaintiff's admission before this court, summary judgment must be granted to the defendant on the § 1983 claim." *Ante* at 399. As the court rightly says, *ante* at 402, "the judge was correct, on the record before him, to deny summary judgment" on that claim, and I would leave the matter right there. I would affirm the order denying summary judgment on all the plaintiff's claims.

The court states that the plaintiff admitted at oral argument and in a letter that the decedent was "committed voluntarily to Fuller following a ten-day period of involuntary commitment." *Ante* at 402-403. The court "assume[s] . . .

---

[11]Consequently, we need not consider the defendant's other arguments related to the plaintiff's § 1983 claim.

that the decedent's status was 'conditional voluntary.' " *Ante* at 403 n.8. Indeed, plaintiff's counsel's postargument letter states that, after the period of involuntary commitment had expired by law, Brenda Sue Williams's "status was subsequently changed to *conditional* voluntary and she became a lifetime resident of [Fuller]" (emphasis added). Title 104 Code Mass. Regs. 3.04 (2) (b) (1978), provides that "a patient on conditional voluntary admission status, or any parent or guardian who applied for the admission of such person, shall give three (3) days' written notice to the superintendent or other head of the facility of his intention to leave such facility or to withdraw such person from the facility." The superintendent then has a right to file a petition for commitment on notice that a patient wishes to leave. G. L. c. 123, § 11 (1990 ed.). Plaintiff's counsel's "admission" falls far short of demonstrating that Brenda Sue Williams, who, as the court notes, *ante* at 399-400, "suffered from several physical and mental disabilities" and whose long-term residency at Fuller began with an involuntary commitment, was a "voluntary" patient, unrestrained by the State and therefore not constitutionally entitled to adequate medical care. Many critical factual questions remain unanswered. The court cites no case holding that, on the few facts "admitted" here, the plaintiff would be unable to establish a meritorious § 1983 claim at trial.

Were this court to affirm the judge's denial of summary judgment for the defendant on the plaintiff's § 1983 claim, as I would do, the defendant would not be precluded on remand from presenting another motion in the Superior Court, appropriately supported by reference to rule 56 (c) materials, and the plaintiff's right to present "countervailing materials" would be triggered. Only in this way can a proper determination be made concerning whether the plaintiff has a reasonable expectation of proving at trial that the decedent had a due process right to adequate medical care.