McCann, J.
This is a wrongful death action in which the plaintiff alleges malpractice based on a claim that, on February 26, 1997, the defendants negligently treated her husband, Alan Johnson, by continuing to operate on him after he had suffered cardiac arrest during the surgical procedure, thus causing him to enter a vegetative state requiring mechanical life support. This matter is before the court on the defendants W. Thomas Lawrence, M.D. and John Shufflebarger, M.D.’s motions for summary judgment under Mass.R.Civ.P. 56 and entry of separate and final judgment under Mass.R.Civ.P. 54.[1] For the reasons discussed below, the defendants’ motions are DENIED.

*542
BACKGROUND

The following facts are not in dispute. At all times relevant to this action, Dr. Shufflebarger and Dr. Lawrence were employed by the University of Massachusetts Medical Center (“UMMC”). Mr. Johnson was treated at UMMC, a public employer, when the alleged negligence occurred. Dr. Shufflebarger was the surgeon in charge of Mr. Johnson’s surgeiy. Neither physician saw or treated private patients or billed patients directly. Both physicians received salaries from UMMC, were eligible for employment benefits through UMMC’s Group Practice Plan, and were required as public employees to participate in the Commonwealth’s Contributoiy Retirement System. Dr. Shufflebarger’s work schedule, location of office space, assignments of support staff, operating room staff, students and residents were controlled by Dr. Lawrence, Dr. Meyers and others at UMMC, just as Dr. Lawrence’s work schedule, office space, assignments of support staff, operating room staff, students and residents were controlled by Dr. Meyers.

DISCUSSION

1. Summary Judgment Standard
“Summary Judgment is a ‘device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.’ ” Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983) (citations omitted). There are settled guidelines a trial judge must observe in passing on a motion for summary judgment.
Rule 56(c) of the Massachusetts Rules of Civil Procedure provides that a judge shall grant a motion for summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” In considering a motion for summary judgment, the court does not “pass upon the credibility of witnesses or the weight of the evidence (or) make (its) own decision of facts.” A court should not grant a party’s motion for summary judgment “merely because the facts he offers appear more plausible than those tendered in the opposition, or because it appears that the adversary is unlikely to prevail at trial.” Instead, the court should only “determine whether a genuine issue of material fact exist(s).” When the court considers the materials accompanying a motion for summary judgment, “the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion.” “Also, all doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment.”
Attorney General v. Bailey, 386 Mass. 367, 370-71 (1982) (citations omitted).
The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). See also Highlands Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997).
2. Public Employee Immunity
The Massachusetts Tort Claims Act, G.L.c. 258, governs tort claims brought against agencies and institutions of the Commonwealth. Under G.L.c. 258, §1, which defines the terms “public employer,” the University of Massachusetts Medical Center is indisputably a “public employer” because it is an institution established by an act of the Legislature and is supported by state funds, see Robinson v. Commonwealth, 32 Mass.App.Ct. 6, 9 (1992), and because it is an institution that “exercises direction and control over the public employee ...”
Under G.L.c. 258, §2, a public employer “shall be liable for injury . . . caused by the negligent or wrongful act... of any public employee while acting in the scope of his employment.” The question in this case, therefore, is whether Dr. Shufflebarger and Dr. Lawrence are “public employees” within the meaning of G.L.c. 258, §2.
The plaintiff contends that neither Dr. Shufflebarger nor Dr. Lawrence are public employees and that summary judgment is inappropriate because there is a genuine dispute about a material fact, viz., whether UMMC exercised control or direction over Dr. Shufflebarger’s and Dr. Lawrence’s treatment of Mr. Johnson or whether they exercised their own independent j udgment.
In determining whether a person is a public employee, the relevant question “is whether a person is subject to the direction and control of a public employer.” Smith v. Steinberg, 395 Mass. 666, 667 (1985). In Smith, it was held that the Doctor was not a public employee because he controlled his own work hours, where he worked, and who he treated. The court further noted that the doctor treated patients not pursuant to any academic function, but rather in his role as a physician. Smith, 395 Mass, at 669.
The mere fact that the University of Massachusetts is a public employer does not mean that all of its employees are “public employees.” McNamara v. Honeyman, 406 Mass. 43, 49 (1989). “A physician is *543 not necessarily a public employee simply because a public entity pays his or her salary, provides a retirement fund, or manages a vacation schedule. In fact, we have noted that ‘the very nature of a physician’s function tends to suggest that in most instances [the physician] will act as an independent contractor,’ not a public employee.” Williams v. Hartman, 413 Mass. 398, 400-01 (1992), quoting Kelly v. Rossi, 395 Mass. 659, 662 (1985). However, the Supreme Judicial Court has also recognized that, “[w]hile physicians exercise independent judgment, a physician can still be deemed a servant where the principal controls the details of the physician’s activities.” McNamara v. Honeyman, 406 Mass. 43, 48 (1989), relying on Kelly v. Rossi, 395 Mass. 659, 662 (1985). Therefore, the question of a physician’s status as a “public employee” under the Tort Claims Act is a question of fact. Williams v. Hartman, 413 Mass. 398, 400 (1992), citing Rowe v. Arlington, 28 Mass.App.Ct. 389, 391 (1990).
In order for the immunity doctrine to apply, the public employer need not supervise or direct each discrete act performed by the public employee physician. Rather, the central question is whether the public employer “directs and controls the physician’s treatment of the patient.” Williams, 413 Mass, at 400. In Williams, the Doctor was held not to be a public employee because he alone made medical treatment decisions for his patients, established his own work schedule, and controlled his own day-to-day activities.
In the present case, Dr. Shufflebarger and Dr. Lawrence contend that they qualify as “public employees” on the following grounds: (1) Mr. Johnson was treated at UMMC, a public employer, when the alleged negligence occurred; (2) they never saw or treated private patients or billed patients directly; (3) they received their respective salaries from UMMC, were eligible for employment benefits through UMMC’s Group Practice Plan, and were required as public employees to participate in the Commonwealth’s Contributory Retirement System; (4) Dr. Shufflebarger’s work schedule, assigned office space, assignments of support staff, operating room staff, students and residents were controlled by Dr. Lawrence, Dr. Meyers and others at UMMC, just as Dr. Lawrence’s work schedule, office space, assignments of support staff, operating room staff, students and residents were controlled by Dr. Meyers; (5) as assistant professors of plastic surgery at UMMC, they were public employees of UMMC; (6) they were required to abide by all UMMC policies; (7) they were required to attend regularly scheduled teaching conferences as well as department meetings in which Dr. Shufflebarger received advice and direction on clinical and academic matters from Dr. Lawrence, and Dr. Lawrence received advice and direction on his role as Plastic and Reconstructive Surgery Chief from Dr. Meyers; and (8) Dr. Shufflebarger was subject to a formal annual performance review by Dr. Lawrence and Dr. Meyer as well as informal routine performance evaluations throughout the year, and Dr. Lawrence’s work performance was similarly subject to review by Dr. Meyers.
Ms. Johnson disputes that the defendants were public employees of UMMC. She further alleges that the defendants have offered insufficient proof that (1) they were required to abide by all UMMC policies; (2) they were required to attend regularly scheduled teaching conferences as well as department meetings in which each received advice and direction on clinical and academic matters; and (3) that Dr. Shufflebarger was subject to performance review by Dr. Lawrence or that Dr. Lawrence’s work performance was similarly subject to review by Dr. Meyers.
Ms. Johnson’s central argument is that evidence of UMMC’s administrative control over the defendants, such as UMMC’s assignments of support and operating room staff, UMMC’s assignments of students and residents to work with the defendants, UMMC’s assignments of office space and system of centralized patient billing, UMMC’s terms of compensation and benefits, and UMMC dictated work schedules, does not reach the question of whether Dr. Shufflebarger or Dr. Lawrence were subject to UMMC’s direction and control in their treatment of Mr. Johnson when the alleged negligence occurred. In support of this argument, Ms. Johnson points to Dr. Lawrence’s deposition testimony that he cannot remember any occasion while practicing medicine at UMMC where he was directed by another physician in how to care for a patient. (Lawrence Depo. p. 46.)
In Smith, the doctor was found to have treated patients privately and to control his own work schedule, two factors which contributed to the determination that he was not a public employee. Similarly, in Williams, the doctor was found to have control over his own work schedule which was a contributing factor in the court’s determination that he was not a public employee. Therefore, in this case, the fact that neither Dr. Shufflebarger nor Dr. Lawrence saw or treated patients privately and neither controlled their own work schedules are factors which indicate they should be deemed immune from liability as public employees. However, in Smith, the absence of public employee status was based on a more complete set of factors in addition to the two discussed above, e.g., the doctor controlled where he worked, who he treated, and received compensation based on the number of patients he saw. These factors are absent in this case.
The additional factors presented by the defendants in support of their arguments, viz., that they were paid by UMMC and that they participated in the Commonwealth’s retirement fund, (Williams, 413 Mass at 400), or that they are public employees by virtue of their academic posts (Smith, 395 at 669), are insufficient, as a matter of law, to warrant summaiy judgment in their favor because they are not probative on the question of public employee status.
*544 Furthermore, while Dr. Shufflebarger states that he called for Dr. Lawrence to get a “sort of second opinion” (Shufflebarger Dep. p. 10), this common practice among colleagues should not be confused with an exercise of direction and control over Dr. Shufflebarger’s decision on Mr. Johnson’s continued treatment. Therefore, whether either defendant is a public employee remains a disputed material fact.
In addition, even if Dr. Lawrence’s second opinion were determinative of direction and control over Dr. Shufflebarger’s treatment decision, which this court does not so find, there is a discrepancy in the defendants’ respective deposition testimony as to whether Dr. Lawrence was even present in the operating room that day. In Dr. Lawrence’s deposition, he testifies that he “[has] no recollection of ever being in that Operating Room” (Lawrence Dep. p. 11, line 2), and that he was very surprised at being listed as one of the surgeons in this suit. (Lawrence Dep. p. 11, lines 11-13.) When asked why he would be listed as one of the surgeons on the Operative Note, which was dictated the day of the surgery, if he had not been present in the room during the surgery, Dr. Lawrence answered, “It baffles me. I have no idea.” (Lawrence Dep. p. 25, lines 13-19.) Dr. Lawrence denies ever instructing Dr. Shufflebarger in the treatment of Mr. Johnson during the surgery. (Lawrence Dep. p. 18, lines 20-24.) Dr. Lawrence states that after the surgery was completed, Dr. Shufflebarger called Dr. Lawrence’s office and the two spoke by telephone about what had occurred during the surgery. (Lawrence Dep. p. 19, lines 5-8, p. 20, lines 10-13.)
Dr. Shufflebarger’s deposition recounts a different version of events. In his deposition, when asked whether Dr. Lawrence was involved in the surgery, Dr. Shufflebarger answered, “He came in to give me a sort of second opinion on the case . . . [after] Mr. Johnson had his arrest.” (Shufflebarger Dep. p. 10, lines 16-23.) When asked whether Dr. Lawrence was one of Mr. Johnson’s surgeons, Dr. Shufflebarger conceded that he was not and that the operative note listing Dr. Lawrence as one of the surgeons was inaccurate. (Shufflebarger Dep. p. 71, line 24 — p. 72, lines 1-10.) However, Dr. Shufflebarger does clearly indicate that Dr. Lawrence was present in the operating room, though not to participate as a surgeon in the procedure. When asked why Dr. Lawrence’s name was listed, Dr. Shufflebarger answered that, although he had dictated it that way, Dr. Lawrence “really was more of an assistant.” (Shufflebarger Dep. p. 72, lines 11-14.) Asked whether Dr. Lawrence had come into the operating room after surgery had begun and whether he remained in the room until the surgery was completed, Dr. Shufflebarger answered in the affirmative. (Shufflebarger Dep. p. 72, lines 15-21.) In responding to the question as to why he had wanted Dr. Lawrence to come to the operating room, Dr. Shufflebarger stated, “anytime you have a difficult situation, it’s good to get another opinion . . . the bottom line was I asked him what his opinion was about finishing the operation, and his opinion was that we should finish it.” (Shufflebarger Dep. p. 75, lines 11-12; p. 77, lines 8-11.) When asked, “Do you know why it was that Dr. Lawrence remained in the room standing up at the table during the rest of the procedure?” Dr Shufflebarger answered, “Just for support.” (Shufflebarger Dep. p. 95, lines 15-18.)
Given these discrepancies and the material dispute over the question of the defendants’ status as public employees, summary judgment for the defendants is inappropriate.
3. Defendants’ Motion for Entry of Separate and Final Judgment
Given that the summary judgment motion is denied, there is no need to address the defendants’ motion for entry of final judgment.

ORDER

For the foregoing reasons, it is hereby ORDERED that defendants W. Thomas Lawrence, M.D.’s and John Shufflebarger, M.D.’s motion for summary judgment and motion for entry of separate and final judgment are DENIED and defendant John Shufflebarger, M.D.’s motion for summary judgment is DENIED.

The defendant John Shufflebarger, M.D. has also submitted a separate motion for summary judgment solely on his own behalf. Because that motion replicates the content of the instant motions, this court considers them consolidated for purposes of this Order. A third defendant named in the Complaint, Chandra Joshi, M.D., has submitted a separate motion for summary judgment and entry of separate and final judgment. Dr. Joshi’s motion is addressed in a separate Order.