Henry, Bruce R., J.
This matter is before the Court on the motion of the defendant Eugene Chung, M.D. for summary judgment and for the entry of separate and final judgment. As grounds for the motion, Dr. Chung asserts that at all times relevant to this case he was acting as a public employee subject to the direction and control of the University of Massachusetts, an agency of the Commonwealth of Massachusetts. As such, he contends, he is immune from liability pursuant to the provisions of G.L.c. 258, §2.[1] For the reasons which follow, Dr. Chung’s motion is ALLOWED.

BACKGROUND

This is a medical malpractice action brought by Gary Joffre (Joffre) on his own behalf and as the Administrator of the Estate of his late wife, Eleanor Joffre. Joffre alleges that the defendants were negligent in their care and treatment of Mrs. Joffre resulting in her premature discharge from the University of Massachusetts Medical Center (UMMC) and in her death three days later. Dr. Chung was the attending cardiologist on the cardiac care unit and Mrs. Joffre was his patient. The plaintiff contends that Dr. Chung was the person who made the medical decisions regarding Mrs. Joffre’s condition and was the person responsible for discharging her from the hospital. Joffre asserts that it was Dr. Chung, and not his supervisor or the hospital, who made the decision to discharge Mrs. Joffre from UMMC. Dr. Chung moves for summary judgment arguing that he was an employee of UMMC, subject to its direction and control at the time in question, and is, therefore, immune from liability for the alleged negligence, pursuant to the provisions of G.L.c. 258, §2.

UNDISPUTED FACTS

1. At the time of his treatment of Eleanor Joffre, Dr. Chung was employed by the Commonwealth of Massachusetts through the University of Massachusetts as an Assistant Professor of Medicine and a Staff Cardiologist in the Division of Cardiology.
2. Dr. Chung was obligated to conduct his clinical practice in accordance with the rules and regulations promulgated by the Board of Trustees of the University. As a full-time faculty member, Dr. Chung’s clinical privileges were delineated by the University and his appointment included duties in instruction, patient care, and administration. He was required to use his treatment of patients, including Eleanor Joffre, to teach cardiovascular medicine to residents and medical students.
*557 3. In March of 1999, the Chief of the Division of Cardiology (Division) was Joel Gore, M.D., who was responsible for the overall administration and management of the Division. Dr. Chung was required to assume the responsibilities assigned to him by Dr. Gore, who approved Dr. Chung’s privileges and reviewed his performance on a regular basis. Dr. Gore had the authority to require Dr. Chung to practice cardiology in accordance with the policies and procedures of the University. Dr. Gore, however, was not involved in the care and treatment of Mrs. Joffre and was not consulted about the decision to discharge her from the UMMC.
4. Dr. Chung was obligated to attend regularly scheduled meetings of the Division during which Dr. Gore provided advice and direction on both academic and clinical matters. There is no evidence presented that Dr. Gore ever gave specific advice as to the care and treatment of Mrs. Joffre or that there were specific policies or procedures relating to the attending physician’s making a decision to discharge a patient.
5. Dr. Gore had final approval over Dr. Chung’s work schedule, including the hours which he worked and the assignments on which he worked. Dr. Chung had to obtain Dr. Gore’s approval for his vacation and personal time off from work. As a result of the assignments by Dr. Gore for the week of March 15-19, 1999, Dr. Chung saw and treated Eleanor Joffre in the Cardiac Care Unit.
6. Dr. Chung was required to treat whatever patients presented to him during his scheduled hours. As the attending cardiologist in the Cardiac Critical Care Unit, Dr. Chung was required to treat Mrs. Joffre and to supervise the residents who were involved in her care. It was his decision as the attending physician as to when Mrs. Joffre would be discharged from UMMC. The administration, including Dr. Gore, did not get involved in the decision as to when a patient could/should be discharged.
7. Dr. Chung did not have private patients of his own while employed by the University. Although he followed patients for a period of time, he treated those patients as they were assigned to him and not as an independent provider. Dr. Chung exercised independent medical judgment in his treatment of patients, but he was always subject to the privileges granted to him by Dr. Gore, who had the authority to require Dr. Chung to practice medicine in accordance with the University’s policies and procedures.
8. As an employee of the Commonwealth, Dr. Chung was paid a fixed salary, which did not depend upon the amount of money he generated, the number of patients he treated, or the number of hours he worked. That salary was annually determined by Dr. Gore, in accordance with guidelines established by the Trustees of the University, and was subject to the approval of the Dean.
9. Dr. Chung did not personally receive payments for his services from any of the patients he treated, including Eleanor Joffre, or their insurers, nor did he have any involvement in the billing of patients.
10. As an employee of the Commonwealth, Dr. Chung was required to participate in the Commonwealth’s Contributory Retirement Plan, and received the health, life, and dental insurance benefits, and was eligible for the disability benefits, offered by the Commonwealth to its employees through the Group Insurance Commission.

DISCUSSION

Summary Judgment Standard

This Court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17.
In deciding a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). Summary judgment, where appropriate, may be entered against the moving party, or may be entered as to certain issues and not others which may present a genuine issue of material fact. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The nonmoving party cannot defeat the motion for summary judgment by resting on his or her pleadings and mere assertions of disputed facts to defeat the motion. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesnerv. Technical Communications Corp., 410 Mass. 805,809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

Public Employee Status

Under G.L.c. 258, the Massachusetts Tort Claims Act, a public employer is liable for the negligent or wrongful act or omission of a public employee who is acting within the scope of his employment. The UMMC and the University are public employers. See Smith v. Steinberg, 395 Mass. 666, 668 (1985). Dr. Chung is an *558 employee of the Commonwealth through the University; however, analysis of his status for purposes of immunity from liability does not end there. More than simply one’s employment status is necessary for an individual to be deemed a public employee for purposes of immunity pursuant to G.L.c. 258, §2. William v. Hartman, 413 Mass. 398, 400 (1992). “A physician is not necessarily a public employee simply because a public entity pays his or her salary, provides a retirement fund, or manages a vacation schedule.” Id. Since the medical profession involves a high degree of education, training, skill, and expertise, with little or no direction and control by others, in most instances the physician will be deemed to be an independent contractor, not a public employee. Kelly v. Rossi, 395 Mass. 659, 662 (1985). The basic question is whether the physician is subject to the direction or control of a public employer. Smith v. Steinberg, 395 Mass. 666, 667 (1985). Factors to be considered by the Court in assessing a physician’s status as a public employee are whether a division chief or some other parly controls the physician’s activities, including his hours and work schedule, and/or supervises the physician’s activities and who his patients would be; whether the physician billed the patients directly; the source of the compensation of the physician; whether the physician’s compensation was related to the number of patients seen; and whether the physician participates in the state retirement plan or receives benefits from the state benefits plans. See Hoover v. Callahan, 408 Mass. 621, 634 (1990); McNamara v. Honeyman, 406 Mass. 43,48 (1989); Smith v. Steinberg, 395 Mass. at 668; Florio v. Kennedy, 18 Mass.App.Ct. 917, 918 (1984). Finally, while physicians generally exercise independent medical judgment in the treatment of their patients, they can still be deemed a servant where the principal controls the details of the physician’s activities. McNamara v. Honeyman, 406 Mass, at 48.
In the present case, the defendant Dr. Chung has established that he is a public employee for purposes of c. 258 immunity. Dr. Chung was employed by the Commonwealth of Massachusetts as an Assistant Professor of Medicine and a Staff Cardiologist in the Department of Medicine at UMMC; he was subject to the policies, rules, and regulations adopted by the Board of Trustees of the University; his clinical privileges were delineated by UMMC; his appointment as a faculty member required him to teach, to care for patients, and to use his care of those patients as a means to teach residents and medical students of the University; he was required to assume the duties assigned to him by Dr. Gore, the Chief of the Division of Cardiovascular Medicine, who approved his clinical privileges and reviewed his performance on a regular basis; he was required to attend Division meetings; Dr. Gore had final approval over his work schedule, including the hours he worked and the assignments on which he worked; he had to obtain Dr. Gore’s approval for use of his vacation and personal time; his daily schedule was determined by what rotation he was assigned by Dr. Gore in any given week; he was required to treat patients assigned to him in the cardiac critical care unit, which is how Mrs. Joffre became his patient; he was required to supervise the residents who participated in Mrs. Joffre’s care and treatment; he had no discretion over what patients he treated as a staff cardiologist and did not have private patients of his own; he treated Eleanor Joffre as an employee of the Commonwealth and not as an independent provider; he was paid a fixed salary by the University; that salary was not dependent upon how much money he generated or the number of patients he saw or the number of hours he worked, but upon how productive he was in terms of the University’s goals as determined by his supervisors; he did not bill any patients for his services and did not receive payment directly from patients or their insurers for those services; he was required to participate in the Commonwealth’s retirement plan and received health, dental, disability, and life insurance benefits from the Commonwealth. Given all of those facts, I conclude that a reasonable fact finder could not find that the defendant Dr. Chung was anything but a public employee under the direction and control of a public employer and, thus, is immune from individual liability under G.L.c. 258, §2.

ORDER

For all of the foregoing reasons, it is ORDERED that the motion of the defendant Eugene Chung, M.D. for summary judgment is ALLOWED. The motion by Dr. Chung for separate and final judgment is DENIED.

Summary judgment has been entered, unopposed, for the co-defendant Evan Norfolk, M.D., who was a resident at the time in question.