Henry, Bruce R., J.
This is an action in which the plaintiff, Richard Callahan (“Callahan”), challenges the termination of his employment by the defendant, Center for Technology Commercialization, Inc. (“CTC”). Callahan asserts that CTC wrongfully discharged him in violation of public policy (Count I), in breach of a fiduciary duiy owed to him (Count II), and without just cause (Count III). The case is now before the Court on the defendant’s motion for summary judgment. After a hearing and a consideration of the materials provided by the parties and of the applicable case law, the motion is ALLOWED in part and DENIED in part.

FACTUAL BACKGROUND

CTC is a tax-exempt not-for-profit corporation with a principal place of business in Westboro, Massachusetts. William Gasko (“Gasko”) was the sole incorporator of CTC, which was incorporated on October 15, 1991. Callahan was retained by CTC in September 1992 to do some consulting work and subsequently was hired as an employee. There was no written employment contract between CTC and Callahan. Gasko was the CEO of the corporation and Callahan was the President and Treasurer. James Dunn (“Dunn") was the Chief Technical Officer. At or about the time that Callahan became the President and Treasurer, he, Gasko, and Dunn, agreed to co-manage the company with each of them reporting to the Board of Trustees. Callahan characterizes that agreement as a partnership agreement; however, it appears to be nothing more than an agreement as to how the company would be managed. That agreement was never reduced to writing and was not an agreement in which the Board of Trustees was a parly. That management arrangement was in effect until January 2001, when a change was implemented by the Board of Trustees. Beginning in January of 2001, Gasko was the CEO, with responsibility for making decisions for the corporation, and he reported to the Board of Directors; Dunn and Callahan reported to Gasko as of January 2001. Callahan was not happy with that reorganization and viewed it as a demotion.
Among Callahan’s responsibilities at CTC was to implement policies and procedures for compliance with the laws and regulations of applicable jurisdictions and to track employees’ time for billing the government to ensure that federal auditing standards were met. Callahan says that he policed Gasko very carefully.
In 2000, Eagle Picher (EP) asked CTC to do some work which Callahan felt was appropriate for the skills and mission of CTC. He disagreed, however, with Gasko’s handling of the project and with his retaining of consultants without consulting agreements. Callahan challenged the Board of Trustees’ motives for deviating from CTC’s standard practice of requiring such agreements in writing and he challenged the consultants for charging fees which in his view were excessive. He also disagreed with the Trustees’ efforts to shift CTC into a commercial business and to build the private contract aspect of the business.
Callahan asserts that he strongly warned the Board of Trustees that Gasko was dishonest, particularly with respect to his time cards, and that he was incompetent. He also complained about the Board’s failure to manage Gasko. Callahan also complained about the new organizational/management structure and reported that overhead and administration expenditures were spinning out of control. When Callahan complained to Gasko about those expenses, Gasko told him it was not his responsibility to worry about those expenses.
In February of 2001, Callahan accused Gasko of improperly charging time to NASA for work he had done for EP. At a meeting at which several persons were present, Callahan accused Gasko of stealing and was rebuked by one of the trustees for using inflammatory language. Callahan acknowledged, however, at his deposition that he fulfilled his obligation to make sure that all of the time cards which were submitted were done properly and that to the best of his knowledge the cards were ultimately submitted properly. He also indicated that he never formally raised a complaint to the Board about Gasko’s timekeeping, but raised his concerns through comments made to Gasko when Board members could have heard them.
According to Callahan, CTC’s financial status deteriorated under Gasko’s leadership. Callahan made *408 recommendations to the Board in October of 2001 to reinstate a structure which forced financial accountability, to halt a project begun by Gasko to reorganize the company, and to focus on serving CTC’s nonprofit customers who were paying the bills. Instead of adopting those recommendations, the Board voted unanimously to allow Gasko to terminate Callahan’s employment. Gasko had requested the authority to do so citing lack of timely financial reports, cost overrun problems, an inability to work as a team member, and his refusal to accept accountability. Gasko fired Callahan on November 6, 2001, purportedly without providing him with a reason.
At that time, according to Callahan, Gasko was fraudulently billing the government and CTC was now operating in the red.
Subsequent to Callahan’s firing, the Board had an audit done and terminated Gasko on December 21, 2001, for, among other reasons, improper billing.

SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). All evidence must be viewed in the light most favorable to the non-moving party. Williams v. Hartman, 413 Mass. 398, 401 (1992).
DISCUSSION Wrongful Termination
The plaintiffs complaint contains three counts, for wrongful termination, breach of fiduciary duty, and termination without just cause, which all rest on the same basic claim: that he was fired for his efforts to keep Gasko and the company on the straight and narrow. He raises numerous issues that he had with the operation of the company and with Gasko in particular. Assuming that he is an at-will employee, in order to prevail on his claim of wrongful termination, Callahan must establish that his termination violated some clearly defined and well-established public policy which is threatened by the employer’s action. Glaz v. Ralston Purina Co., 24 Mass.App.Ct. 386, 390 (1987). He must show that he was terminated either for asserting a legally protected right, or for doing what the law requires, or for refusing to do what the law forbids. Smith-Pfeffer v. Superintendent of Walter B. Fernald School, 404 Mass. 145, 149-50 (1989). The issue of whether there was a public policy violation is a question of law for the court, not for a juiy. Mello v. Stop & Shop Companies, 402 Mass. 555, 561 (1988).
Callahan’s numerous disagreements with Gasko and the CTC Board about the conduct and direction of the corporation are internal matters. He disagreed with many of the business decisions made by the defendant or by Gasko; however, disagreements about internal corporate matters do not provide a basis for the public policy exception to the general rule that an at-will employee may be terminated for any reason or no reason at all. Id. at 560-61. The vast majority of the issues raised by Callahan related to internal matters and to the running of the corporation. Those issues do not give rise to the public policy exception.
Callahan’s concerns about Gasko’s allegedly fraudulent timekeeping and billing and his purported notifications to the Board of those concerns are closer questions. At his deposition, Callahan acknowledged that he never made a formal complaint at a Board meeting about Gasko’s billing practices. Instead, he says he directed comments to Gasko informally while members of the Board were within earshot. In his answers to interrogatories, Callahan says that at a meeting in February 2001, he confronted Gasko with improper billing of work done for EP to a NASA contract and told the group that Gasko was stealing from government contracts. He was reprimanded by one of the trustees for the accusation of stealing, but he was not fired then. He also indicated at his deposition that he had fulfilled his obligation to make sure that all of the time cards which were submitted by Gasko were done properly and that to the best of his knowledge Gasko’s cards were ultimately submitted properly. He asserts that at the time of his firing, he was aware of Gasko’s continued improper billing practices. Ultimately, Gasko was terminated by CTC for, among other reason, improper billing.
The materials show that Callahan did not make a formal complaint to the Board about Gasko’s billing practices and acknowledged that to his knowledge Gasko’s time cards were ultimately submitted properly. He did make a charge of stealing against Gasko in February of 2001, and was reprimanded by a trustee for using the term stealing, but was not fired then. He remained on the job for another nine months. In October of2001, Callahan communicated in writing and again at the Board meeting how and why the overhead and administrative costs of CTC were running out of control. He demonstrated that CTC was failing fiscally and how CTC’s performance and the value of its services to its clients had fallen to its lowest rate since the formation of the company. He recommended the reinstatement of an organizational structure which forced accountability and a focus on serving customers who were paying their bills, rather *409 than on chasing commercial contracts. It was after that Board meeting that the Board met and gave Gasko the authority to fire Callahan. At that time, according to Callahan, Gasko was improperly billing time to a government account. It is Callahan’s contention that it was because of his fear of being discovered that Gasko sought to terminate him.
An employee who is terminated for bringing an internal complaint about an alleged violation by his superior of the criminal law may recover for wrongful termination. Shea v. Emmanuel College, 425 Mass. 761, 762-63 (1997). In this case, I find that there is a well-defined public policy principle which would be violated if the plaintiff was terminated because of his reports or knowledge of Gasko’s fraudulent billing practices on government contracts. The inquiry does not end there, however. The plaintiff is obligated to present facts on the record that support his claims that he was discharged for reporting criminal activity by Gasko to CTC. An assertion or speculation that CTC discharged him for that activity is not sufficient to create a dispute of material fact concerning the reason for his discharge. Shea v. Enimanuel College, 425 Mass. 761, 763 (1997).
CTC contends that the firing was due to the interpersonal issues between Callahan and Gasko, lack of timely financials, overrun problems, Callahan’s inability to work as a team member, and his refusal to accept accountability. Callahan disputes each of those reasons and points to deposition and other evidence which he says supports his contention that the reasons offered by the defendant for his termination are a pretext for the real reason: his knowledge of and reporting of Gasko’s fraudulent billing. Whether the evidence offered by the plaintiff, and the inferences to be drawn therefrom, is a sufficient counter to the defendant’s stated reasons for the termination is an issue for a jury to determine. The plaintiff has raised a legitimate question of fact concerning the reasons for his termination and, therefore, summary judgment as to Count I is not appropriate.

Breach of Fiduciary Duty

Callahan’s second claim, that the defendant breached a fiduciary duty, which it owed to him, is not viable. There was no partnership agreement giving rise to such a duty. At best, what the plaintiff has demonstrated is that there was an agreement among the three managers of the corporation, Gasko, Callahan, and Dunn, to co-manage the corporation in a particular manner, despite the management arrangement called for in the bylaws. The Board’s acquiescence in the management format agreed to by the managers does not make it into a partnership. The Board’s decision to revert to the management arrangement called for in the bylaws was also appropriate and cannot serve as the basis for a claim of breach of fiduciaiy duty. The officers and directors of the corporation owe a fiduciaiy duty to the corporation. There is no basis for the plaintiffs assertion of a right to recovery on his part personally for any breach of the fiduciaiy duty which may have been owed to the corporation by Gasko or the Board members. Therefore, the defendant’s motion for summary judgment is allowed as to the claims in Count II.

Termination Without Just Cause

In Count III, the plaintiff seeks to recover for his termination without just cause. He asserts that he had an implied contract of employment and that he could not be terminated without just cause. A contract implied in fact may be found to exist from the conduct and the relations of the parties. LiDonni, Inc. v. Hart, 355 Mass. 580, 583 (1969); see also Maynard v. Royal Worcester Corset Co., 200 Mass. 1 (1908) (existence of contract is question of fact for jury). The plaintiff asserts that based on the circumstances of his employment, including his “election” every year and his salary, he was not an at-will employee but rather had an implied contract for the duration of one year. Although I am skeptical of the plaintiffs ability to establish that he had such a contract, that is a question for the jury. Whether he was terminated for good cause is, likewise, a question to be determined by the jury. Therefore, the defendant’s motion for summary judgment is denied as to the claims in Count III.

ORDER

For the foregoing reasons, it is ORDERED that the motion of the defendant CTC for summary judgment is DENIED as to Counts I and III and ALLOWED as to Count II.