Lauriat, Peter M., J.
Kathleen T. Brown (“Brown”), brought this action against the Massachusetts Office on Disability (“MOD”) and Barbara E. Lybarger (“Lybarger”), general counsel and assistant director of client assistance programs at MOD. Brown alleges that MOD breached a settlement agreement by releasing adverse information about her former employment with MOD without her authorization, which in turn, led to Brown losing her job as a claims representative with the Social Security Administration. Brown has now moved pursuant to Mass.R.Civ.P. 56 for partial summary judgment on her breach of contract claim against MOD (Count I of Second Amended Complaint). MOD has filed a cross motion for summary judgment *382 on this same claim.[1] The parties have submitted a joint stipulated statement of undisputed facts. For the following reasons, Brown’s motion for partial summary judgment on her breach of contract claim is allowed, and MOD’S cross motion for partial summary judgment on that claim is denied.
BACKGROUND
The undisputed facts as revealed by the summary judgment record and the joint stipulated statement of undisputed facts are as follows. Brown, who is legally blind, resides in Lynn, Massachusetts. MOD is a division of the Commonwealth of Massachusetts. Lybarger, a licensed Massachusetts attorney, works at MOD as general counsel and assistant director of client assistance programs.
On June 26, 2000, MOD hired Brown to work as a Program Coordinator I/Advocate. As an advocate, she helped individuals with disabilities gain access to programs offered by the Commonwealth of Massachusetts. Supervisors at MOD gave Brown positive work reviews and increased her pay from $569.11 per week to $686.48 per week over the two and a half years she worked at MOD. Lybarger served as Brown’s supervisor for approximately two years.
On April 29, 2003, Brown and MOD executed a settlement agreement (“the Agreement”) in connection with Brown’s separation from MOD. Lybarger reviewed and approved the Agreement for MOD. Myra Berloff, acting director at MOD, signed the Agreement on behalf of MOD. The Agreement states that:
This settlement is entered into by the Commonwealth of Massachusetts, through the Human Resources Division/Office of Employee Relations, the Massachusetts Office on Disability (the Department), and the National Association of Government Employees (NAGE). The terms of this settlement agreement resolve fully all outstanding issues concerning Step III grievances ... filed by the Union on behalf of the grievant Kathleen Brown. It shall be agreed by the parties that:
1. As soon as administratively possible, the Department shall rescind the Grievant’s termination from employment and shall accept the Grievant’s voluntary layoff. The grievant’s voluntary layoff shall be considered to have been tendered on February 4, 2003. The Grievant agrees to waive any recall rights that might otherwise arise from a layoff in accordance with Article 18 of the current Unit 6 collective bargaining agreement.
2. As soon as administratively possible, the Department shall remove all warnings, written reprimands and suspensions given to the Grievant during her employment with the Department from her personnel file. The documentation to be removed shall include the memorandum dated January 17, 2003 that is part of the subject matter of this grievance.
3. The Department agrees not to contest the Grievant’s eligibility for unemployment compensation arising from her separation from employment with the Department.
4. The Department agrees to draft a letter of reference in support of the Grievant’s efforts to obtain alternative employment.
5. It is understood that this agreement is for settlement purposes only and shall not serve as precedent or evidence in any other proceeding except a proceeding in which either party alleges a breach of this Agreement.
6. The Union and the Grievant agree to withdraw any and all pending and future actions against the Massachusetts Office on Disability or the Commonwealth relating to or arising out of the matters upon which these grievances are based.
Michael Dumont, the assistant director for administration at MOD, submitted an affidavit in which he stated that pursuant to the Agreement, in April of 2003, he removed all warnings, reprimands, and suspensions from Brown’s MOD personnel file. Dumont also changed Brown’s personnel file to reflect that her separation from MOD was a voluntary layoff as of February 4, 2003, rather than a termination.
After Brown left MOD, Lybarger received several requests for employment references regarding Brown. During the summer of 2004, the Social Security Administration (“the SSA”) orally requested an employment reference for Brown from MOD. In her response to the SSA, Lybarger referenced the letter of reference that was drafted as part of the Agreement.
On September 7, 2004, the SSA hired Brown. Brown signed an Authorization for the Release of Information (the “Authorization”). The beginning of the Authorization directs the person signing the form to “(cjarefully read this authorization to release information about you.” The Authorization states:
I authorize any investigator . . . conducting my background investigation, to obtain any information relating to my activities from schools . . . employers ... or other sources of information. This information may include, but is not limited to . . . performance, attendance, disciplinary, employment history, and criminal history record information.
I understand that for some sources of information, a separate specific release will be needed, and I may be contacted for such a release at a later date.
I authorize custodians of records and sources of information pertaining to me to release such information upon request of the investigator, special agent, or other duly accredited representative of any Federal agency authorized above regardless of any previous agreement to the contrary. *383 . . . Copies of this authorization that show my signature are as valid as the original release signed by me. This authorization is valid for two (2) years from the date signed.
In the fall of 2004, the United States Office of Personnel Management (“the OPM”) sent Lybarger an Investigative Request for Employment Data and Supervisor Information form (“the Form”) as part of its background investigation on Brown. Lybarger received the Form, but she did not provide the requested information at that time. Instead, she wrote on the Form, “written consent to disclose required in advance,” and she returned the Form to the OPM. In an affidavit, Lybarger stated that she was aware of the settlement agreement that MOD had with Brown, and she was concerned about completing the Form. Lybarger also stated that she assumed that Brown had waived the terms of the Agreement when she signed the Authorization.
Subsequently, the OPM sent Lybarger the Form again, this time accompanied by the Authorization that Brown had signed on September 7, 2004. Lybarger then completed the Form and stated that Brown was “discharged for unfavorable employment or conduct” and was not eligible for rehire as a result of “reasons relating to unfavorable employment.” Lybarger also indicated on the Form that she had adverse information concerning Brown’s mental or emotional stability and her general behavior or conduct and that she wanted to discuss this adverse information. Lybarger wrote on the Form that:
Ms. Brown’s behavior was unacceptable in that she regularly accused coworkers of illegal and abusive conduct. These accusations were thoroughly investigated and found to be baseless. She also shared them publicly, undermining the agency.
Moreover, Lybarger noted on the Form that she would not recommend Brown for a government security clearance or employment. Lybarger signed and dated the Form on November 16, 2004 and returned it to the OPM. She did not consult with or communicate her intention to Brown before doing so.
In a memorandum dated March 21, 2005, SSA District Manager Laurie Zastrow notified Brown of her decision to terminate Brown’s employment with the SSA, which was effective on the close of business that day. This memorandum notes that Brown responded “NO” to question twelve contained on a Declaration for Federal Employment form that Brown signed on June 28, 2004. Question twelve states, “During the last 5 years, have you been fired from anyjob for any reason, did you quit after being told that you would be fired, did you leave anyjob by mutual agreement because of specific problems, or were you debarred from Federal employment by the Office of Personnel Management or any other Federal agency?” Brown marked on the Form with an “X” that she had not.
Over three years after the SSA fired her, Brown brought this action against MOD and Lybarger. Brown has now moved for summary judgment on her breach of contract claim. MOD has filed a cross motion for summary judgment on that claim.
DISCUSSION
Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment. Pederson, 404 Mass. at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). All the evidence must be viewed in the light most favorable to the non-moving party. Williams v. Hartman, 413 Mass. 398, 401 (1992).
Breach of Contract Claim
Brown asserts that she is entitled to summary judgment because MOD breached the Agreement when it communicated a negative reference about her to the SSA. Also, Brown asserts that she did not waive her rights under the Agreement when she signed the Authorization and that the Authorization did not allow MOD to release harmful information to SSA about her. MOD, however, contends that it did not breach the specific terms of the settlement agreement and argues that Brown indeed waived the terms of the Agreement when she signed the Authorization, which directed it to provide information to SSA.
In order to prevail on a breach of contract claim, the plaintiff must prove an agreement supported by consideration, that the plaintiff was ready, willing, and able to perform, that the defendant breached the contract, and that the plaintiff suffered damages for the breach. Singarella v. Boston, 342 Mass. 385, 387 (1961). A settlement agreement is a contract, and is thus, subject to contract law. Mauras v. United States, 82 Fed.Cl. 295, 298 (2008).
*384 In this case, MOD violated the specific terms set forth in the Agreement, and therefore, Brown must prevail on her breach of contract claim against MOD. The Agreement dated April 29, 2003 required MOD to “rescind [Brown’s] termination from employment” as soon as administratively possible, “accept [Brown’s] voluntary layoff,” and “remove all warnings, written reprimands and suspensions given to [Brown] during her employment with the Department from her personnel file.” Also, MOD agreed to “draft a letter of reference in support of the [Brown’s] efforts to obtain alternative employment.” Moreover, the parties “understood that this agreement is for settlement purposes only and shall not serve as precedent or evidence in any other proceeding except a proceeding in which either party alleges a breach of this Agreement.”
The unambiguous terms of the Agreement were intended to prevent MOD from providing Brown’s future potential employers like the SSA with the specific information that Lybarger disclosed about Brown on the Form in November of 2004. When Lybarger finally provided the requested information regarding Brown, Lybarger acknowledged on the Form that Brown was “discharged for unfavorable employment or conduct” and was not eligible for rehire as a result of “reasons relating to unfavorable employment.” Furthermore, Lybarger explained on the Form that Brown regularly made baseless accusations against her coworkers of illegal and abusive conduct. Yet based on the Agreement, MOD never terminated or discharged Brown. Instead, MOD accepted Brown’s voluntary layoff. By revealing to the OPM and the SSA that Brown was originally discharged for unfavorable conduct, MOD breached the Agreement because under the Agreement, the parties agreed to act as if Brown’s termination from MOD had never occurred and the separation was to be treated as a voluntary layoff.
MOD’s contention that Brown waived the terms of the Agreement when she signed the Authorization is unavailing. See Rose v. Regan, 344 Mass. 223, 229 (recognizing that waiver is the intentional relinquishment of a known right). Initially, Lybarger, who was concerned about breaching the Agreement, properly refused to disclose the information that the OPM sought on the Form, and when she returned the Form to the OPM, she wrote “written consent to disclose required in advance.” The OPM returned the Form to Lybarger, but this time it included the Authorization. The Authorization, which Brown signed, states, “I Authorize custodians of records and sources of information pertaining to me to release such information upon request of the investigator, special agent, or other duly accredited representative of any Federal agency authorized above regardless of any previous agreement to the contrary.’’[2] Moreover, the Authorization also notes that, “I Understand that for some sources of information, a separate specific release will be needed, and I may be contacted for such a release at a later date.”
Here, the language contained in the Authorization neither specifically indicates that Brown waived her rights under the Agreement, nor does it invalidate the specific terms under the Agreement by which Brown separated from MOD. Despite the language of the Agreement and Dumont’s alteration of Brown’s MOD personnel file, MOD disclosed to the OPM and the SSA that Brown was “discharged for unfavorable employment or conduct.” Not only was this information factually incorrect, because Brown’s personnel file at MOD indicated that Brown left as a result of a voluntary layoff, but also MOD never contacted Brown to ascertain whether she was relinquishing her rights under the Agreement.[3] Instead, Lybarger disclosed negative information about Brown’s employment history at MOD and merely assumed that Brown relinquished her rights under the Agreement.[4] In choosing this course of action, MOD breached the Agreement and caused Brown to suffer damages. As a consequence, Brown’s motion for partial summary judgment on her breach of contract claim must be allowed, and MOD’s cross motion for summary judgment must be denied.
ORDER
For the foregoing reasons, Plaintiff Kathleen T. Brown’s Motion for Partial Summary Judgment on Breach of Contract is ALLOWED, and Defendant Massachusetts Office on Disability’s Cross Motion for Partial Summary Judgment on Breach of Contract Claim is DENIED.

Although the court allowed Brown’s motion for leave to amend her First Amended Complaint on October 20, 2009, Brown filed her motion for summary judgment on her breach of contract claim prior to that date. Nevertheless, since the First Amended Complaint and the Second Amended Complaint generally contain the same breach of contract claim, the court will address the parties’ cross motions for summary judgment as they relate to that claim in the Second Amended Complaint.

MOD erroneously concluded that Brown unequivocally waived her rights under the Agreement based on this language. Nonetheless, the information that MOD revealed on the Form was no longer even supported by Brown’s MOD personnel file, which MOD had altered pursuant to the Agreement.

Until Lybarger’s disclosure of the information on the Form, the OPM and the SSA had no knowledge of any settlement agreement between Brown and MOD. Absent a waiver from Brown specifically relinquishing her rights under the Agreement, MOD should have ascertained from Brown whether she authorized it to disclose potentially negative information to the OPM and the SSA about her past employment at MOD.

Since the language set forth in the Authorization, was drafted by the OPM or the SSA rather than by MOD, Brown did not waive her rights under the Agreement by signing the Authorization.